**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

MICHAEL VICTOR,

                    *Plaintiff,*

                                        CASE NO. 1:20-cv-13218

*v.*

                                        DISTRICT JUDGE THOMAS L. LUDINGTON

KIMBERLY REYNOLDS;
ADVANCED CORRECTIONAL
HEALTHCARE, INC.;                       MAGISTRATE JUDGE PATRICIA T. MORRIS

                    *Defendants.*

_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF No. 69)**
**AND DEFENDANTS' MOTION FOR SANCTIONS (ECF No. 77)**

I.   **RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **DENY** both Plaintiff's

motion for default judgment (ECF No. 69) and Defendants' motion for sanctions (ECF No.

77).

II.  **REPORT**

     A.   **Introduction**

Michael Victor fell and broke his jaw after he suffered an epileptic seizure outside

the Ostego County Jail where he had been detained the night before.  An officer brought

Victor to the jail around midnight, and while jail officials were booking Victor, Victor's

mom dropped off his anti-seizure medication.  She explained to one of the officers that

Victor needed to take the medication to avoid having a seizure.  But despite repeatedly

asking officers for his medication throughout the night, the officers never gave it to him. When Victor asked one of the officers why he could not have his medication, the officer explained that it was because the jail nurse did not approve it.

Victor brought this action against the jail nurse, Kimberly Reynolds, and her employer, Advanced Correctional Healthcare ("ACH"). But what initially seemed to be a promising case for Victor and his attorney soon began to fall apart. During discovery, Reynolds testified that she was not scheduled to work that night and that she did not receive a call from any of the corrections officers. And the corrections officers who booked Victor either could not remember that night or denied any involvement in providing Victor his medication.

Defendants eventually moved for summary judgment, and Victor moved the Court to deny the motion so that he could conduct additional discovery. The Court granted his motion and ordered Defendants to produce a representative of ACH for a deposition, and to produce schedules and phone records to help Victor ascertain whether any ACH employee received a call from the jail.

Although the ACH representative supplied almost none of the documents requested in Victor's notice of deposition, explaining that most of the documents Victor wanted did not exist. And while the Defendants provided phone records for their on-call nurse practitioner, these records revealed that no one from the jail called her while Victor was detained.

Frustrated with what he viewed as a deficient response to the Court's order compelling discovery, Victor moved the Court to enter default judgment against the

Defendants as a discovery sanction.  And likewise frustrated with the drawn-out litigation, Defendants moved the Court to impose Rule 11 sanctions against Victor for pursuing what they believed to be meritless claims.

### B.    Background

#### 1.    Victor's Detainment and Release

Late in the evening on April 27, 2019, Officer Blake Huff arrested Michael Victor at a bar in Gaylord for "disorderly" conduct.  (ECF No. 45-5, PageID.540–41).  Officer Huff transported an intoxicated Victor to the Ostego County Jail where they arrived shortly after midnight.  (*Id.* at PageID.541).  While Huff booked Victor, Victor's mother arrived to drop off a container of Keppra, an anti-seizure medication.  (*Id.*; *see also* ECF No. 45-11, PageID.595).  She gave the pills to Officer Huff and explained that Victor had to take them to avoid having a seizure.  (ECF No. 45-5, PageID.541).  Indeed, Victor was epileptic and needed to take the pills twice per day; however, Victor's mom did not relay these details to Officer Huff.  (ECF No. 45-5, 544; *see also* ECF No. 45-11, PageID.595).  Officer Huff then gave the pills to either Officer Tallent or Officer Leach, the only two corrections officers working at the time.   (ECF No. 45-5, PageID.541–42).   Based on his prior experience with the jail, Officer Huff expected the corrections officers to "get" Victor's Keppra "cleared by the nursing staff before they could administer any medication."  (ECF No. 80-5, PageID.1917, 1920).

But Victor never received his Keppra that night, and officers did not return his medication until they released him the following morning.  (ECF No. 45-11, PageID.601–

03).  Having gone the entire night without taking Keppra, Victor had a seizure on the pavement outside of the jail while waiting to be picked up and broke his jaw.  (ECF No. 75-7, PageID.1724–25).

That much is essentially undisputed; what remains unclear are the events that transpired between Victor's booking and his release.  Victor testified that that one of the officers (either Tallent or Leach) told him that his mom had dropped off his medication. (*See* ECF No. 75-7, PageID.1731–32).  This officer told Victor that before he could give him his medication, "they were going to contact the nurse to see if [he] could take it."  (ECF No. 75-7, PageID.1731).  Victor continued to remind officers "throughout the night" that he needed his medication, but the officers refused to provide it.  (ECF No. 45-11, PageID.611).  Indeed, after Officers Sullivan and Musall relieved Leach and Tallent in the early morning, Officer Sullivan told Victor that he could not give him his Keppra "because the nurse did not okay it" because Victor "had alcohol in [his] system."  (ECF No. 75, PageID.1732).

The nurse Sullivan referred to was Kimberly Reynolds.  (*See* ECF No. 45-11, PageID.611).  Reynolds is an employee of Advanced Correctional Healthcare ("ACH"), a private company which provides healthcare services to Ostego County Jail.  (ECF No. 45-4, PageID.528).  Nurse Reynolds and ACH deny ever receiving a call from the jail while Victor was detained.  (*Id.* at PageID.529).  Indeed, Nurse Reynolds testified that she never received a call from the jail, and she provided a copy of her work schedule which shows that she did not work during Victor's detainment.  (*Id.* at PageID.529; ECF No. 31-1, PageID.386–88).  She also explained that not only was she not physically present at the

4

jail, but that she was "never on call." (ECF No. 45-4, PageID.529). They also point out that Officer Leach remembered essentially nothing from that night, and that Officer Tallent denied having any interaction with Victor or his mother. (ECF No. 45-7, PageID.564–65; ECF No. 49-58, PageID.798).

### 2.    Procedural History

Victor filed a complaint against Reynolds in December 2020, alleging that she violated his Eighth Amendment rights by providing inadequate medical care. (ECF No. 1, PageID.7). He later amended his complaint to include a *Monell* claim against ACH, and the Court extended the discovery deadline to accommodate this new claim. (ECF No. 38, PageID.430–31; ECF No. 43, PageID.459).

After Victor filed his amended complaint (and about eight months after the beginning of discovery), ACH and Reynolds moved for summary judgment, arguing that the record contained no evidence from which a reasonable factfinder could conclude that the corrections officers ever called Reynolds or any other ACH employee. (ECF No. 45). In response, Victor argued that a genuine dispute of material fact existed, but in the alternative, he moved the Court to deny Defendants' motion under Federal Rule of Civil Procedure 56(d) because he lacked sufficient information to respond to Defendants' motion. (ECF Nos. 47, 48). Indeed, shortly after Defendants moved for summary judgment, the parties filed two discovery motions, revealing a wide range of pending discovery disputes. (ECF Nos. 54, 55).

The Court granted Victor's Rule 56(d) motion and resolved their pending discovery motions on June 14. (ECF Nos. 64, 67). Specifically, the Court ordered the Defendants to produce: (1) either "phone records" of "all persons who were working or on a call during the relevant time period of the incident alleged in the complaint" or "authorization or any information necessary to provide [Victor] the ability to access those records from any phone provider"; (2) for the time period between "booking and release," any "staffing schedules and "confirmation documentation" indicating what staff "worked at the time indicated on the schedule"; and (3) "a representative from ACH who provided active management of the contract between Ostego County Jail and ACH at the time of the incident . . . ." (ECF No. 64, PageID.1321–22). When the Court granted Victor's motion to compel a deposition of an ACH representative, this included Victor's requests for the deponent to produce various documents belonging to eight, distinct "topics" at the deposition, pursuant to Federal Rule of Civil Procedure 30(b)(2). (*See* ECF No. 54-3, PageID.882–83; ECF No. 64, PageID.1321). The Court instructed the Defendants to produce phone records within thirty days of the order and to produce schedules within forty-five days of the order. (ECF No. 64, PageID.1321–22).

Victor deposed ACH's representative on July 5. (ECF No. 69-2, PageID.1349). For the deposition, ACH produced Dr. Jill Bresnahan, their vice president of medical operations. (*Id.* at PageID.1359). Although Dr. Bresnahan did not work for ACH while Victor was detained, the former vice president who worked for ACH at the time was no longer with the company. (*Id.* at PageID.1359, 1398).

6

Much to Victor's chagrin, Doctor Bresnahan brought almost none of the documents that Victor requested in his deposition notice, explaining that many of these documents simply did not exist. (*Id.* at PageID.1353–85). She did however, provide some insight as to ACH's normal process for staffing medical practitioners. She explained that ACH provides each jail with a mid-level practitioner (such as a nurse-practitioner) who can prescribe medication. (*See id.* at PageID.1355, 1370). In general, practitioners, unlike nurses, are constantly on call: when they are not physically present at the jail, they can be reached by phone. (*Id.* at PageID.1376, 1381). And if jails cannot reach their practitioner, ACH typically provides at least two backups for the jail to contact. (*Id.* at PageID.1382–84). However, she stated that the jails, not ACH, set their own policies for staffing and contacting practitioners. (*Id.* at PageID.1354, 1364, 1370). Thus, ACH did not maintain "schedules" for its employees; ACH only learned of its employees' schedules after they logged their hours for payment. (*Id.* at PageIDn1376–77). She also identified the practitioner assigned to Ostego County Jail as Courtney Brinkman. (*Id.* at PageID.1369–70). ACH later provided phone records indicating that Brinkman never received a call from the Ostego County jail on April 28, although the date on which they supplied this information to Victor is unclear. (*Compare* ECF No. 70-3, PageID.1468–69 (document from AT&T providing Brinkman's phone records to Defense Counsel on July 28), *with* ECF No. 69, PageID.1332 (explaining that Victor had not received these records as of October 5)).

Discovery closed on September 12, and on October 5, Victor moved the court to enter default judgment against both Defendants as a sanction for ACH's response to this Court's order compelling discovery.  (ECF Nos 65, 69).  On the same day, Defendants renewed their motion for summary judgment, and on October 27, Defendants moved the Court to impose Rule 11 sanctions against Victor.  (ECF Nos. 70, 77).

### C.    Analysis

#### 1.    Rule 37(b)(2)(A)

Federal Rule of Civil Procedure 37 provides courts with a two-pronged tool to resolve discovery disputes.  Under subsection (a), courts may issue orders compelling discovery when parties dispute whether information falls within the scope of discovery. Fed. R. Civ. P. 37(a).  If that fails, subsection (b) grants courts the power to impose a wide range of sanctions, from simple warnings up to dismissal or default judgment.  Fed. R. Civ. P. 37(b)(2)(A).[1]

Here, Victor filed a Rule 37(b) motion for default judgment about two months after becoming aware that the Defendants violated an order compelling discovery, and almost an entire month after the close of discovery.  For the following reasons, I suggest that the Court should deny the motion as untimely, or in the alternative, deny Victor's request for default judgment and impose less severe sanctions.

---

[1] Courts may impose sanctions under Rule 37(b)(2)(A) for violations of any order compelling discovery, not just orders under Rule 37(a).  *Id.*

### a.   Timeliness

Although Rule 37(b) does not establish a deadline for parties to move for sanctions, a Rule 37(b) motion must be filed without unreasonable delay.  *THEC Int'l v. Cohen Mohr LLP*, 301 F. Supp. 3d 1, 11–12 (D.D.C. 2018).  What constitutes an "unreasonable" delay varies from case to case—there is no point in litigation at which all 37(b) motions necessarily become untimely.  *Williams v. Nationwide Ins. Co.*, No. 12-13904, 2014 WL 12659422, at *5 (E.D. Mich. Apr. 29, 2014).  To determine whether a motion for sanctions is timely, courts consider how long the moving party waited to move for sanctions after learning of the discovery violation, whether discovery has ended, whether the nonmoving party has been prejudiced by the moving party's delay, and any other relevant information.  *Long v. Howard University*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008).

Most courts disfavor Rule 37(b) motions filed after the close of discovery, and they generally will only entertain such motions if either (1) the moving party did not learn of the discovery violation early enough to file a motion for sanctions before the close of discovery, or (2) the moving party's delay did not prejudice the nonmoving party.  *See, e.g., Heller Fin. Leasing, Inc. v. Gordon*, No. 03-6326, 2006 U.S. Dist. LEXIS 39100, at *14 (N.D. Ill. June 12, 2006); *Glenn v. Scott Paper Co.*, No. 92-1873, 1993 U.S. Dist. LEXIS 14966, *30 n.3 (D.N.J. Oct. 20, 1993).  Take *MGA Entm't, Inc. v. National Products Ltd.* for example.  There, the Court set the deadline for discovery at the end of June 29, yet despite knowing of the sanctionable conduct since January, the Defendants did not move for sanctions until August 2.  No. CV 10-07083, 2012 U.S. Dist. LEXIS

131614, at *13–16 (C.D. Cal. Sept. 14, 2012).  The court reasoned that the defendants unreasonably delayed their motion by allowing the discovery deadline to expire without bringing the matter to the Court's attention when they had ample opportunity to do so.  *Id.* at *15–16.  By contrast, in *Williams v. Nationwide Insurance Company*, this Court found a motion for sanctions, filed just two days after the discovery deadline, to be timely where the moving party had only learned of the discovery violation two weeks before filing its motion.  2014 WL 12659422, at *5.  The *Williams* Court also noted that the nonmoving party was not prejudiced by the delay.  *Id.*; *see also Lancaster v. Indep. School Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998).

But unlike *Williams*, there is no justification for Victor's tardiness.  Victor deposed ACH's representative on July 5 and the Court ordered the Defendants to provide Victor with phone records and staffing schedules by July 14 and July 29, respectively.  (ECF No. 69-2, PageID.1348; *see* ECF No. 64).  Yet rather than prepare his motion as soon as the Defendants purportedly violated the Court's order, Victor's attorney sat on these issues for well over a month before discovery ended on September 12.  (ECF No. 65, PageID.1323). And after discovery closed, Victor's attorney waited another twenty-three days before bringing these issues to the Court's attention.  (ECF No. 69, PageID.1344).  This case is two years old, and discovery has already been extended twice since it began in June 2021: now is not the time for sluggish motion practice.  (ECF Nos. 1, 26, 43, 65).

And although it is not a dispositive issue, I note that Victor's delay in filing his motion may have prejudiced the Defendants.  *See MGA Entm't, Inc.*, 2012 U.S. Dist.

LEXIS 131614, at *13–16 (finding a Rule 37(b) motion to be untimely without ever considering the prejudice to the nonmoving party). Victor filed his motion for sanctions on the same day that Defendants filed their motion for summary judgment, just a week before the dispositive motion deadline. (*Compare* ECF No. 69, PageID.1344, *with* ECF No. 70, PageID.1439). Victor's motion requests, in the alternative, that the Court reopen discovery. (ECF No. 69, PageID.1333). And had Victor filed his motion promptly, the Court could have issued an order extending discovery before the Defendants would have had to file their motion for summary judgment. So Victor's delay could potentially increase the time and resources Defendants must spend on this matter by needlessly requiring them to file yet another motion for summary judgment.[2]

Similarly, Victor's "alternative" motion "to compel" is untimely. To start, it is not entirely clear what Victor is asking the Court to order. (ECF No. 69, PageID.1330). He titles his motion as a "Motion for Default Judgment as a Sanction for Discovery Abuse, or, in the Alternative, Sanctions and an Order to Compel Deposition and Discovery Production" but he never clearly explains what "discovery" he wants "produced." (*Id.*) The only time he elaborates on what "alternative" relief he desires, he asks for an order "reopen[ing]" discovery "for the purpose of taking another 30(b)(6) deposition of a person at ACH." (*Id.* at PageID.1333). However, Victor may have intended to ask for more than

---

[2] In fact, the record contains some circumstantial evidence suggesting that this may have been the motivation for Victor's delay. Despite knowing of the alleged discovery violations since July, and threatening to file this motion at the deposition of ACH's representative, Victor did not move for default judgment until after learning, on September 30, that Defendants intended to file a motion for summary judgment. (ECF No. 69-2, PageID.1385, 1401; ECF No. 70, PageID.1413; ECF No. 74-9, PageID.1635–36).

another extension of the discovery deadline.   The body of his motion discusses his deposition of ACH's representative at length, and he appears to take issue with the representative's failure to bring certain documents to the deposition.  (*See id.* at PageID. 1336–43).  So it appears that he may be asking the Court to (again) compel the Defendants to produce a new deponent and provide the requested documents at this deposition.  (*See id.*)  But Victor also mentions in passing that the Defendants violated the Court's order (ECF No. 64) by not providing adequate staffing schedules or phone records, so perhaps he also seeks an order compelling the production of these documents.   (*See id.* at PageID.1331–32).

But no matter how the Court construes Victor's motion, the result is the same.  The Court cannot "recompel" the production of discovery—sanctions are the exclusive vehicle through which the Court may enforce a prior order compelling discovery.  *Acosta v. Austin Electric Servs. LLC*, 325 F.R.D. 322, 324–25 (D. Ariz. 2018); *see also Nozinich v. Johnson & Johnson, Inc.*, No. 09-02105, 2011 WL 13124086, at *2 (W.D. Tenn. Apr. 4, 2011).  So to the extent Victor asks the Court to order a new deposition,[3] the production of staffing schedules, or the production of phone records, these requests are not motions to compel, but motions for sanctions.   And these motions for sanctions, as discussed above, are untimely.  Further, even if Victor did file an alternative motion to compel, he would have filed this motion after discovery closed and he provided no explanation for his delay.  *See*

---

[3] This would include the production of the documents listed in (ECF No 54-3) and (ECF No. 69-3, PageID.1406–07), some of which overlap with the documents the defendants were ordered to produce in (ECF No. 64). *See generally Kretek v. Bd. of Comm'rs*, No. CIV 11-676 RB/GBW, 2012 WL 12838430, at *2–4 (D.N.M. Oct. 19, 2012).

*David v. Signal Int'l, LLC*, No. 08-1220, 2014 WL 6612598 (citing *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 200–01 (E.D. Mich. 2002)).  So the Court should also deny any alternative "motion to compel" as untimely.

### b.    Merits

Should the Court reach the merits of Victor's motion, I suggest that it decline to enter default judgment against the Defendants.  Instead, I suggest that the Court should extend discovery, find that the Defendants partially violated the Court's order in (ECF No. 64), and warn Defendants that further violations of the Court's previous order may result in more severe sanctions, including default judgment.

### i.    Whether the Defendants Violated the Court's Order

Before the Court can impose sanctions on the Defendants, it must first find that they violated the Court's discovery order.  *Peltz v. Moretti*, 292 F. App'x 475, 478 (6th Cir. 2008).  In (ECF No. 64), the Undersigned ordered the Defendants to: (1) produce either "phone records" of "all persons who were working or on a call during the relevant time period of the incident alleged in the complaint" or "authorization or any information necessary to provide [Victor] the ability to access those records from any phone provider"; (2) produce, for the time period between "booking and release," any "staffing schedules and "confirmation documentation" indicating what staff "worked at the time indicated on the schedule"; and (3) "a representative from ACH who provided active management of the contract between Ostego County Jail and ACH at the time of the incident . . . ."  (ECF No. 64, PageID.1321–22).   When the Court granted Victor's motion to depose a

13

representative of ACH, this included Victor's requests for the deponent to produce various documents belonging to eight, distinct "topics" at the deposition, pursuant to Rule 30(b)(2). *See generally Kretek*, 2012 WL 12838430, at *2–4.

Victor primarily takes issue with ACH's conduct at the deposition.  He argues that while the Defendants did produce a representative for ACH, the individual they produced did not work for ACH during the incident and she failed to provide many of the documents which Victor requested she bring to the deposition.  (ECF No. 69, PageID.1343).  Although Victor mostly limits his discussion to his Rule 30(b)(2) document requests, several of these requests overlap with his Rule 34 document requests.  (*See id.* at PageID.1337–39).

Defendants first argue that they could not comply with part of the Court's order because some of the documents Victor requested them to produce for the deposition did not exist.  (ECF No. 74, PageID.1518–20).  Specifically, they argue that they could not produce documents pertaining to topics one, four, and eight.  (*Id.*)  They also argue that although the Court ordered them to produce a representative who "provided active management of the contract between Ostego County Jail and ACH at the time of the incident" for the deposition, no such employee existed, as this responsibility fell entirely on OCJ, and the employee who best fit this description, their vice president of medical operations, no longer worked for ACH.  (*Id.* at PageID.1518).

A district court cannot impose sanctions on a party for violating a discovery order with which the party could not comply.  *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991).  Once the moving party establishes a prima facie case that the nonmoving party

disobeyed a court order, the nonmoving party carries the burden of establishing its inability to comply.  *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989).  To satisfy this burden, the nonmoving party cannot simply assert that it made a good faith effort to comply with the order; it must show, "categorically and in detail," that it took "all reasonable steps to comply" with the order.  *Glover*, 934 F.2d at 708; *see also United States v. Conces*, 507 F.3d 1028, 1043 (6th Cir. 2007).

I suggest that ACH carried its burden in establishing that it could not comply with the court's order to produce documents pertaining to topics one and eight.  In topic one, Victor requested "policies" regarding "healthcare providers . . . being staffed to provide medical care, including providing medication at Ostego County Jail . . . ." (ECF No. 69-2, PageID.1353–54).  But ACH's VP testified that no such policies exist.  She explained that ACH's clients set the policies for ACH's employees, so "all policies and procedures" would "belong to the jail."  (*Id.* at PageID.1354, 1364).[4]  Similarly, under topic eight, Victor requested documents regarding "[t]raining for ACH medical personnel regarding their duties [to provide] medical care."  (*Id.* at PageID.1365).  But again, ACH explained that that the jail, not ACH, set logistical policies regarding medical care, and ACH did not train its employees.  (ECF No. 69-2, PageID.1364–65, 1389–92).  After all, their practitioners "come to [ACH] already licensed and trained," so there would be no need for ACH to train its employees.  (*Id.* at PageID.1392).

I also suggest that ACH did not violate the Court's order by producing Doctor Jill

---

[4] Doctor Bresnahan did testify that ACH possessed "HR-related policies," but Victor does not explain how these types of policies would fall within the scope of his request. (*Id.* at PageID.1354).

Bresnahan, the current vice president of medical operations, as its representative at the deposition.  As ACH explains, no ACH employee directly manages the contract with Ostego County Jail, and the individual who worked as the vice president during Victor's detainment is no longer an employee at ACH.  (ECF No. 45-10, PageID.589; ECF No. 69-2, PageID.1359, 1398).

But ACH fails to establish that it could not comply with topic four, which requested documentation of "[a]ll instances of complaints . . . of" ACH either "providing inadequate medical care or having inadequate staffing for a prison facility in the Midwest region since 2017 . . . ."  (ECF No. 69-2, PageID.1356–57).  The Defendants do not detail the steps they took to comply with this order; indeed, they completely ignore this issue in their response brief.  (ECF No. 74).  And this is troubling because the deposition transcript reveals that there are other avenues ACH may have pursued to obtain this information.  Indeed, while Doctor Bresnahan testified that she did not know whether such documents existed, she revealed that other employees, such as ACH's president and ACH's vice president of finance, might know whether these records exist.  (*Id.* at PageID.1360–61).

As to the remaining issues—topics two, five, and six, from Victor's deposition notice and issues two and three from the Court's order compelling discovery—Defendants argue that they did, in fact, comply with the Court's discovery order.  As an initial matter, I note that topics two, five, and six seek essentially the same information as Victor's Rule 34 document requests.  (*Compare* ECF No. 69-3, PageID.1406–07, *with* ECF No. 54-2, PageID.870–71, *and* ECF No. 64).  That is, each of these requests either seeks phone

16

records or scheduling information pertaining to ACH employees.  (*Id.*)  Accordingly, the Courts order compelling Defendants to provide schedules and phone records applied to both Victor's Rule 30(b)(2) requests and his Rule 34 requests.

According to the Defendants, they supplied the scheduling information and phone records for the only employee who could have possibly received a phone call from the jail. (ECF No. 74, PageID.1519–20).  They explain that generally, Jails are assigned one mid-level practitioner who is on call "24/7."  (ECF No. 69-2, PageID.1376, 1381).  The usual protocol is for jail officials to first attempt to call the primary on-call practitioner.  (*Id.* at PageID.1382).  If the practitioner does not answer his or her phone, then jail officials could call a "back-up person," and if the back up does not answer, then officials can call the "regional nurse manager."  (*Id.*; *see also* ECF No. 74, PageID.1519).  So, because no one from the Jail ever called the on-call practitioner during Victor's detainment, as shown by her phone records, Defendants conclude that none of the jail officials could have called the back up ACH employees.  (*See* ECF Nos. 70-3, 70-4).  Accordingly, Defendants assert that they need not have provided the identities or phone records of these employees.

The flaw with Defendants' argument is that it conflates policy with practice. Corrections officers are not robots, programmed to follow their policies exactly as they are written.  According to ACH's representative, the officers should have had the contact information of these backups, and it is certainly conceivable that they could have bypassed the procedure outlined by ACH's representative (even if that would be unlikely).  (*See* ECF No. 69-2, PageID.1382).  More importantly, however, ACH's representative testified that although jail officials *generally* follow the process she outlined, the jails set their own

17

policies and procedures regarding how and when officers should contact ACH's medical professionals—so Ostego County Jail may not have followed the "back up" procedure described by ACH's representative at all. (*Id.* at PageID.1364–65, 1389; *see also* ECF No. 45-10, PageID.590, ECF No. 75-8, PageID.1750, 1746). That is precisely why the Undersigned ordered the Defendants to produce scheduling information and phone records for "*all persons*" working during the relevant time—not just the employees who, in Defendants' estimation, would have been most likely have been called.

The bottom line is that no matter who they were *supposed* to call, the officers had contact information for at least three ACH practitioners, yet the Defendants provided the required discovery for only one. Accordingly, I suggest that the Defendants violated (ECF No. 64) by providing neither staffing information, nor phone records (or identifying information that would enable Victor to subpoena these records), of the two other individuals who were on call while Victor was detained.

### ii.    Appropriate Sanctions

Having found that the Defendants violated the Court's previous order, the next question to consider is whether the Court should enter default judgment, and if not, what alternative sanctions would be appropriate. Rule 37(b) allows courts to sanction parties who violate discovery orders. Fed. R. Civ. P. 37(b)(2)(A). Although parties may move the Court to impose a particular sanction, the Court has wide discretion to impose any sanction it finds appropriate. *Fields v. Trinity Food Serv.*, No. 1:17-cv-01190-SHM-cgc, 2022 WL 662321, at *1 (W.D. Tenn. Mar. 24, 2022) (citing *Chambers v. NASCO, Inc.*,

501 U.S. 32, 42 n.8 (1991)).  And in doing so, the Court is limited only by its imagination: the sanctions listed in Rule 37 (such as staying proceedings and rendering a default judgment) are illustrative, not exhaustive.  *Jaen v. Coca-Cola Co.*, 157 F.R.D. 146, 149–50 (D.P.R. 1994).

To determine the appropriate sanctions for a violation of a discovery order, district courts weigh four factors: (1) "whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault"; (2) "whether the adversary was prejudiced by the party's failure to cooperate in discovery"; (3) "whether the party was warned that failure to cooperate could lead to the sanction"; and (4) "whether less drastic sanctions were first imposed or considered."  *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir.1997).  These factors are applied more "stringently" where counsel, rather than the party, is responsible for the discovery violation.  *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997).

In most circumstances, none of these factors are dispositive.  *Mager v. Wis. Central, Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019).  However, a district court may enter default judgment upon finding a "clear record" of "willfulness, bad faith," or otherwise "contumacious conduct," even if the remaining factors weigh against default judgment.  *Id.* By the same token, however, Courts should hesitate to enter default judgment where the party has not acted in bad faith, particularly where counsel, not the party itself, is responsible for the discovery violation.  *Harmon*, 110 F.3d at 368 (citing *Freeland*, 103 F.3d at 1278, 1280); *see also Bass v. Jostens*, 71 F.3d 237, 241–42 (6th Cir. 1995); S*nap-*

*On Business Solutions, Inc. v. Hyundai Motor America*, No. 5:07-CV-1961, 2011 WL 9925879, at \*7 (N.D. Ohio June 8, 2011). That is because default judgment and dismissal are "drastic" sanctions, reserved for only "extreme cases." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). Indeed, a district court should only enter default judgment as a "last resort." *Beil v. Lakewood Engineering and Manufacturing Company*, 15 F.3d 546, 551–52 (6th Cir.1994) (citing *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 985 (6th Cir.1988)); *see also Carpenter v. Flint*, 723 F.3d 700, 704 (6th Cir. 2013). If possible, the court should impose sanctions that encourage compliance with the prior order, and in doing so, the court should narrowly tailor its sanctions so that they are no harsher than necessary to achieve compliance. *FDIC v. Conner*, 20 F.3d 1376, 1383 (5th Cir. 1994).

Here, the Court should not enter default judgment because Victor fails to demonstrate bad faith or contumacious conduct. *See Patterson v. Grand Blanc Tp.*, 760 F.2d 686, 689 (6th Cir. 1985). Contumacious conduct describes "behavior that is perverse in resisting authority and stubbornly disobedient." *Carpenter*, 723 F.3d at 704–05. The party's conduct "'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'" *Wu v. T.W Wang, Inc.*, 420 F.3d 641, 643 (6th Cir.2005) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir.2001)). Or, put differently, the violating party must have displayed a "conscious and intentional failure to comply with the court order." *Bass*, 71 F.3d at 241. Minor transgressions, such as violating "local rules requiring filings to be double-spaced and

20

submitted electronically," or brief delays in responding to motions typically do not amount to "contumacious conduct." *Carpenter*, 723 F.3d at 705.

Although deficient, Defendants' actions fall far short of the sort of contumacious conduct courts have found to warrant default judgment or dismissal in other cases. Consider *Harmon v. CSX Transp., Inc.*, for instance. There, the Sixth Circuit held that the district court did not abuse its discretion in finding that a plaintiff who completely ignored an order compelling discovery displayed contumacious conduct warranting dismissal. *Harmon*, 110 F.3d at 368–69. Although the district court ordered the plaintiff to provide discovery within eight days of the order, plaintiff's counsel neglected to provide any discovery. *Id.* at 365–66. And when opposing counsel moved the district court to dismiss the action twelve days after the discovery was due, plaintiff's counsel again failed to respond to this motion, even after the district court extended his deadline to respond to the motion. *Id.* at 366. The Sixth Circuit explained that this conduct was "more than adequate to establish" a "clear record of delay and contumacious conduct." *Id.* at 368.

By comparison, Defendants' discovery violations are relatively mild. Indeed, Defendants complied with most of this Court's previous order—they produced a representative of ACH for a deposition, supplied timesheets for the primary on-call practitioner, and gave Victor a copy of that practitioner's phone records. (ECF Nos. 70-2, 70-3, 74-7). They also provided documents concerning the training of jail staff, and Victor appears to concede that they properly responded to topics three and seven. (ECF No. 74-

8; *see* ECF No. 69, PageID.1337–38).  Moreover, ACH simply did not possess most of the documents that it did not provide.

The only true violations of this Court's order were Defendants' failure to provide documented "instances of complaints" regarding "inadequate medical care," as well as their failure to provide the scheduling information and phone records of the backup practitioners, whom they explained would have been unlikely to have been called since the OCJ officers never called the primary on-call practitioner.   Of course, Defendants should have made this argument before the Court issued (ECF No. 64) and it does not excuse the Defendants from providing this information.  But it does indicate that their shortcoming may ultimately have had little impact on Victor's claims, and it also indicates that Defense Counsel may have sincerely believed that he was not required to produce these documents.

Accordingly, I suggest that Defendants' actions were not "stubbornly disobedient" such that they would amount to contumacious conduct.  *Cf. Harmon*, 110 F.3d at 368.  And even if Defendants' shortcomings could be characterized as "contumacious conduct," they were not so egregious as to warrant default judgment.  *Cf. Pepin v. Wisconsin Central Ltd.*, No. 2:19-cv-42, 2021 WL 5606974, at *3–4 (W.D. Mich. July 26, 2021) (reasoning that the "[plaintiff] likely acted in bad faith, but to a degree that does not support dismissal," by partially complying with an order compelling discovery and withholding material he believed was not responsive to the court's order).

Of course, even if Defendants acted in bad faith, this would only mean that the Court could enter default judgment, not that it must enter default judgment, and I suggest that the

remaining factors weigh heavily against this "drastic" sanction. *United Coin Meter Co., Inc.*, 705 F.2d at 845.

To start, by imposing a default judgment, the Court would leap to the most drastic sanction possible without first attempting more conservative options. *See Pepin*, 2021 WL 5606974, at *5 ("The Sixth Circuit has held that a district court should take '"measured" and "gradual" steps' to the ultimate sanction of dismissal.") (quoting *Freeland*, 103 F.3d at 1280). Although Victor argues otherwise, the Court's order compelling discovery was not a sanction. Under Rule 37, courts may issue orders compelling discovery to resolve discovery disputes. Fed. R. Civ. P. 37(a). And only when a party violates the court's order may the court then impose sanctions under Rule 37(b). *See Acosta*, 325 F.R.D. at 324–25; *Nozinich*, 2011 WL 13124086, at *2. In other words, sanctions, by definition, only enforce violations of court orders. *Nozinich*, 2011 WL 13124086, at *2. Thus, Defendants' violation of (ECF No. 64), not their initial response to Victor's discovery requests, was the sanctionable conduct, and because the Court has not yet reprimanded Plaintiffs for violating this order, it has not yet imposed sanctions.

And not only would the Court pass up an opportunity to try more moderate sanctions, but it would do so without first warning the Defendants that unsatisfactory compliance with (ECF No. 64) could have led to default judgment. *See Freeland*, 103 F.3d at 1279–80. Nothing in the Court's order explicitly warns Defendants of any possible sanctions, let alone default judgment. (ECF No. 64). And although the possibility of sanctions for failure to comply with a court order may sometimes be implied, there is no

reason why the Defendants should have expected their partial compliance with the Court's order to immediately lead to default judgment. *Cf. Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (holding that while the district court did not explicitly warn the plaintiff that it risked dismissal, the court's prior order compelling discovery *and* imposing moderate sanctions should have put the plaintiff on notice that further violations could have resulted in dismissal).

Victor's attorney explains that the Court did not need to warn the Defendants because he took it upon himself to do so. (ECF No. 69, PageID.1341). There are several issues with Counsel's "warning." First, although Counsel warned the Defendants that he would file an "appropriate motion," he never specified that he would move for default judgment. (ECF No. 69-2, PageID.1401, ECF No. 69-3, PageID.1407). And even if he had, this "warning" never came until *after* the Defendants violated the Court order. (*Id.*) But even more to the point, Victor's attorney does not speak with the authority of the Court, and he is in no position to warn the Defendants about what sanctions the Court may, or may not, impose. *See Freeland*, 103 F.3d at 1279 (analyzing whether the "court" gave "prior notice"). Defendants need not have relied on any warning from opposing counsel.

And finally, while Victor does demonstrate prejudice, he does not explain why only this drastic remedy, and not some lesser sanction, can make him whole. Although "simply showing that [he] 'waste[d] time, money, and effort in pursuit of cooperation which [the opponent] was legally obligated to provide' can suffice to establish prejudice," Victor is concerned with a more specific injury. *Annabel v. Erichsen*, No. 15-10345, at *4 (E.D. Mich. Mar. 15, 2019) (quoting *Schafer v. Defiance Police Dep't*, 529 F.3d 731, 737 (6th

24

Cir. 2008)).  He worries that, because "discovery is now closed" he "may not be able to make [his] case without the" missing discovery.  (ECF No. 69, PageID.1341).

I suggest that a more measured sanction could assuage Plaintiff's concerns without blindsiding Defendants with a default judgment.  Specifically, I suggest that if the Court reaches the merits of Victor's motion, it should extend discovery to allow ACH and its attorney to fully comply with (ECF No. 64) and warn them that further deficiencies may lead to harsher sanctions, including default judgment.

In addition, I suggest that the Court should not impose any sanctions against Reynolds individually.  The Court's discovery order (ECF No. 64) exclusively addressed information that was relevant to Victor's claims against ACH.  Indeed, Reynolds had already provided her work schedule (establishing that she was not working while Victor was detained) to Victor's attorney, and Defendants were only required to provide phone records for employees "working . . . during the relevant time period . . . ."   (ECF No. 31-1, PageID.388; ECF No. 64, PageID.1321); *see* 7 Moore's Federal Practice-Civil § 37.50(2)(c) (Matthew Bender 3d ed. 2022) ("[T]he sanction may only affect the claims or defenses to which the discovery would have been pertinent.").

## 2.    Rule 11 Sanctions

I also suggest that the Court deny Defendants' Rule 11 motion for sanctions.  Under Rule 11, attorneys must conduct a "reasonable" inquiry into the facts of the case before filing a complaint.  Fed. R. Civ. P. 11(b).  When filing a complaint, an attorney must certify that, to the best of his or her knowledge, the pleadings either already have "evidentiary

support" or "will likely have evidentiary support after a reasonable opportunity for" discovery. *Id.*

This is not a "one-time obligation." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir.1988). Attorneys have a "continuing responsibility to review and reevaluate" their pleadings and modify them where appropriate. *Id.* at 335–36. Thus, once an attorney becomes aware that his or her client's claim "lacks merit," the attorney should not continue to pursue that claim. *Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 373–74 (6th Cir. 1996). The ultimate "test for the imposition of Rule 11 sanctions" is whether the individual's persistence in litigating a claim "was reasonable under the circumstances." *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Aguirre*, 410 F.3d 297, 304 (6th Cir. 2005) (internal quotation marks omitted) (quoting *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 792 (6th Cir.1988)).

Parties must clear a remarkably low hurdle to establish that their claim or defense has "evidentiary support" under Rule 11. Even a claim that cannot survive summary judgment can evade Rule 11 sanctions so long as there is "some" evidence supporting it. *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 778–79 (6th Cir. 1996); *see also Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991); *Alvarado, Next of Friend of M.A., v. Collins-Bazant*, No. 4:19CV3075, 2020 WL 94466, at *7 (D. Neb. Jan. 8, 2020). In other words, even if the evidence in support of a claim is so thin that no reasonable factfinder could side with the plaintiff, sanctions still may not be appropriate; Rule 11

sanctions are warranted only if there is "absolutely nothing in the evidence" to support a claim. *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 360 n.2 (7th Cir. 1987).

Take *Runfola* for example. There, after "two and one half years" of discovery, the plaintiff failed to obtain any evidence in support of his antitrust claim, apart from a short affidavit that the Court had struck from the record. 88 F.3d at 374. Indeed, the Court noted that the plaintiff neglected to conduct any discovery and deposed none of the thirteen witnesses whom he noticed. *Id.* at 371, 374. Yet, the Plaintiff continued to litigate the action through summary judgment, requiring the "defendants to expend significant time and money in defense of a meritless action." *Id.* Accordingly, the Sixth Circuit held that the district court did not abuse its discretion in imposing sanctions under Rule 11. *Id.* at 374.

Victor's claims against both ACH and Reynolds turn on a threshold issue: whether officers at the jail ever called either Defendant for permission to give Victor his Keppra. Defendants argue that the Court should impose sanctions because after a year and a half of discovery, Victor continues to pursue these claims despite possessing almost no evidence in support of his claim.

In support of their motion, Defendants inundate Victor with a litany of evidence indicating that jail officials never called Reynolds or any other ACH representative. For example, Defendants note that Reynolds was not scheduled during the incident, that Reynolds denied receiving a call from the jail during the incident, that no official at the jail recalled calling anyone from ACH, that Officer Leach testified that officials never called

Reynolds during the late night or early morning,[5] and that the on-call practitioner (as evidenced by her phone records) never received a call from the jail while Victor was detained.  (ECF No. 77, PageID.1818–19; ECF No. 82, PageID.1994–98; *see also* ECF No. 31-1; ECF No. 45-3; ECF No. 70-3; ECF No. 80-6, PageID.1928–29; ECF No. 80-9, PageID.1982).

But despite this evidence supporting defendants' position, Victor provides at least "some" evidence in support of his claim.  Victor primarily relies on his own deposition testimony where he recalls a corrections officer (either Leach or Tallent) telling him that "they were going to contact the nurse to see if [he] could take" his Keppra.  (ECF No. 75-7, PageID.1731–32).

Defendants argue that Victor cannot rely on this statement because it is inadmissible double hearsay. However, when considering Rule 11 sanctions and the minimal evidence needed to avoid sanctions, it is unclear at best that the "some evidence" required necessarily must be "admissible evidence." *Hartleip, supra*. Rule 11 itself only speaks of "evidentiary support" Rule 11(b)(3).  Research has not revealed a case specifically dealing with the issue presented here, i.e., whether sanctions are appropriate where some evidence is present to support a claim but the evidence proffered may not be admissible.  Indeed, complaint allegations based on non-admissible evidence does not justify dismissal under Rule

---

[5] Victor misrepresents this testimony to make it appear as though Leach testified that he would call Reynolds at any time she was not working if he needed her assistance.  (ECF No. 80, PageID.1880).  What Leach actually stated was that while he would sometimes call Reynolds after her shift had ended, he never called her late at night or in the early morning.  (ECF No. 80-6, PageID.1928–29).

12(b)(6), much less sanctions.  The court in *Boncimino v. New York State Unified Ct. Sys.*,
2018 WL 2225004, at *10 (S.D.N.Y. May 15, 2018) in denying defendants' motion to
dismiss noted that considering the sufficiency of the complaint based on potentially
inadmissible evidence was not improper:

> With regard to the Individual Defendants assertion that the allegations are
> hearsay, the law does not require that the allegations in a complaint be
> admissible evidence. *See Campanella v. Cty. of Monroe*, 853 F. Supp. 2d
> 364, 378 (W.D.N.Y. 2012) ("Although, as pleaded, these allegations
> are based on hearsay, that does not bar the Court from considering them on
> a motion to dismiss. Neither *Twombly* nor *Iqbal* altered the rule that a
> plaintiff need not plead specific, admissible evidence in support of a claim,
> and a contrary rule would confuse the principles applicable to a motion to
> dismiss with those governing a motion for summary judgment.").

*See also United States v. William Beaumont Hosps.,* No. 2:10-CV-13440, 2019 WL
9094425, at *4–5 (E.D. Mich. June 7, 2019) (Murphy, J.) (Rejecting movant's claim that a
competing qui tam complaint was invalid based on its reliance on hearsay - "because these
are allegations in a complaint and not evidence in a proceeding, [the] characterization of
the allegations as 'inadmissible hearsay' is unpersuasive."); *Polar Molecular Corp. v.
Amway Corp.*, No. 1:07-CV-460, 2007 WL 3473112, at *4 (W.D. Mich. Nov. 14, 2007)
("Whether the allegations in the complaint are based on hearsay is not relevant to a motion
under Rule 12(b)(6) or 12(c).").   And even assuming that the present Complaint was
dismissible on its merits based on the inclusion of hearsay, the test for imposing sanctions
"under Rule 11 is higher than [for dismissal under] Rule 12(b)(6)." *Winter Enterprises,
LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *7 (S.D. Ohio July
29, 2019) (citing *Tahfs v. Proctor*, 316 F.3d 584, 595 (6th Cir. 2003)).

In addition, I note that the amended discovery rules no longer require that the discovery sought be reasonably calculated to lead to the discovery of admissible evidence opting instead to define the scope of discovery as "any unprivileged matter that is relevant to any party's claim and proportional to the needs of the case…" Rule 11(b). It would seem anomalous to require an attorney to support a claim with admissible evidence in the initial pleading but then permit discovery on potentially inadmissible as well as admissible evidence as long as the evidence is relevant.

Alternatively, I suggest that the question of Rule 11 sanctions should be left for the court to consider after deciding the pending summary judgment motion. *See, Shores v. Dupps Co., Inc.*, 2020 WL 6302362, at *9 (C. D. Ill. Sept. 14, 2020); *Freeney v. Bank of America Corp.*, 2016 WL 5897773, at *4 (C.D. Cal. Aug. 4, 2016).

Even if admissibility of the evidence is a proper or necessary condition that should be addressed at this stage under Rule 11, there are arguments to be made in favor of admissibility that at least render sanctions inappropriate. To start, there is only one layer of hearsay for Victor to overcome. That is because the call between the unknown corrections officer and Reynolds would not be admitted to prove the truth of the matter asserted. Victor would admit this statement to show the effect on the listener—he cares only that one of the officers reached out to Reynolds or an ACH practitioner, not whether any assertion in this conversation was true. *See United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009). Indeed, there is no "assertion" that he hopes to prove truthful through this statement. *See SEC v. Nacchio*, 704 F. Supp. 2d 1099, 1115 (D. Colo. 2010) ("[A] question could not

30

reasonably be construed to be an intended assertion.").  And any response from Reynolds would be an opposing party statement (assuming Victor's claims against her survive summary judgment).  Fed. R. Evid. 801(d)(2).[6]  In addition, as for the corrections officer's statement that "they" would "contact the nurse to see if Victor" could take his medication, this is certainly hearsay; however, Victor may be able to admit this statement as a then-existing plan under Federal Rule of Evidence 803(3).  He may also be able to use this as evidence that the officer not only planned to call Reynolds, but that he carried out the plan. *Coy v. Renico*, 414 F. Supp. 2d 744, 765–72 (E.D. Mich. 2006) (citing *Mut. Life Ins. Co. of NY v. Hillmon*, 145 U.S. 285 (1892)). It may be that although the corrections officer told Victor that "they" would call Nurse Reynolds, Victor can only proffer this statement to prove that the declarant, not the other officer, called Reynolds.[7]  *Id.*  And because the declarant did not definitively state whether *he* would call the nurse, a factfinder might entertain the possibility that the declarant never acted out this plan himself.  (ECF No. 75-7, PageID.1731–32).  Moreover, Victor could not identify the officer with whom he spoke, and none of the corrections officers working that night admitted to calling Nurse Reynolds or anyone else from ACH.  (*Id.*) Not only that, but Nurse Reynolds denied receiving a call

---

[6] For similar reasons, Victor may be able to introduce Sullivan's statement that Reynolds told officers that Victor could not take his Keppra because he had "alcohol in [his] system" if he calls Sullivan as a witness.  (ECF No. 75-7, PageID.1732).  The record does indicate whether Sullivan has yet been deposed.

[7] Circuit courts disagree as to whether parties can use the then-existing plan exception to prove whether a *nondeclarant* carried out the plan.  *Id.*  But even under the most liberal view, statements regarding plans can only prove the future conduct of a nondeclarant if the "declarant's intention *requires* the action of the" nondeclarant.  *Id.* (emphasis added).  Because only one of the officers need have called Reynolds, this issue is not implicated.

from the jail and the primary on-call practitioner's phone records show that she did not receive a phone call from the jail.  (ECF No. 31-1).

Victor also provides some evidence to corroborate his assertion that one of the corrections officers called Reynolds or another ACH employee.  First, Officer Huff testified that he gave Victor's Keppra to either Officer Leach or Officer Tallent, and from Huff's experience working with the jail, he "understood that" the jail officers would seek approval from healthcare staff before providing the medication to Victor.  (ECF No. 80, PageID.1876 (citing ECF No. 80-5, PageID.1917, 1920)).  Victor also notes that although Nurse Reynolds was not scheduled to be on-call that night, the representative for ACH testified that their nurses sometimes answer their phones outside of work even when they are not scheduled.  (ECF No. 80-8, PageID.1962).  Victor then points to testimony from Captain Webber where he mentions that Reynolds would often encourage employees to call her if they needed assistance, notswithstanding the fact that she was "never on call." (ECF No. 80-7, PageID.1936–37).  And last, as to ACH, Victor is still attempting to obtain phone records and identities of two backup practitioners who may have been on call during the incident.  *See* Fed. R. Civ. P. 11(b); (ECF Nos. 64, 69).

I suggest that Victor presents enough evidence to avoid Rule 11 sanctions.  Even if this evidence may not be adequate to survive summary judgment, he surpasses the plaintiff in *Runfola* who provided "absolutely no evidence" in support of his claim.  Accordingly, I suggest that the Court deny Defendants' motion for sanctions.

### E.  Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **DENY** Victor's

motion for default judgment and **DENY** Defendants' motion for sanctions.

## III.  <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days

after being served with a copy of the recommended disposition, a party may serve and file

specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy."  Fed.

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections

constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some

objections, but failing to raise others, will not preserve all the objections a party may have

to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991);

*Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any

objection must recite precisely the provision of this R&R to which it pertains.  Not later

than 14 days after service of an objection, the opposing party may file a concise response

proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D.

Mich. LR 72.1(d).  The response must specifically address each issue raised in the

33

objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 13, 2022                          s/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge