UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL VICTOR,

        Plaintiff,                            Case No. 1:20-cv-13218

v.                                            Honorable Thomas L. Ludington
                                                  United States District Judge
KIMBERLY REYNOLDS and ADVANCED
CORRECTIONAL HEALTHCARE, INC.,         Honorable Patricia T. Morris
                                                   United States Magistrate Judge
        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR
RECONSIDERATION AND SUMMARY JUDGMENT**

For nearly two years, the discovery in this case has focused on a narrow question: Did a correctional officer call Nurse Kimberly Reynolds from the Otsego County Jail on April 28, 2019, for permission to administer Michael Victor's seizure medication? The records that would resolve this question are in the possession of Reynolds and her employer, Advanced Correctional Healthcare—the remaining defendants. A motion to dismiss, three motions for summary judgment, and numerous discovery motions later, no conclusive evidence has emerged that resolves the question beyond genuine dispute. So a jury must assess the question.

During the trial, Victor will argue that the defendants violated his rights under the Eighth and Fourteenth Amendments by withholding his seizure medication during his Otsego County Jail detention, leading to a grand mal seizure shortly after he was released from custody.

**I.**

**A.**

Plaintiff Michael Victor suffers from epilepsy and has a prescription to take Keppra twice a day to treat his seizures. ECF No. 45-11 at PageID.616–17. Shortly after midnight on April 28,

2019, Plaintiff was arrested by Gaylord City Police Officer Blake Huff for disorderly conduct and resisting arrest. ECF Nos. 45-5 at PageID.541; 45-6 at PageID.557.

Because Plaintiff had not yet taken his second daily dose, his mother brought his Keppra to the Otsego County Jail and gave it to Officer Huff. ECF No. 45-5 at PageID.541–42. Officer Huff testified that he handed the Keppra to Otsego County Correctional Officer Trey Leach, ECF No. 96-8, PageID.2389, who testified that Correctional Officer Tony "Tallent attempted to call Nurse [Kimberly] Reynolds"[1] for permission to administer the Keppra to Plaintiff, ECF No. 96-9 at PageID.2396. According to the officers' supervisor, they did not record their receipt of the Keppra in the jail log.[2] *See* ECF No. 49-4 at PageID.788. The officers changed shifts at 4:00 AM but did not discuss Plaintiff's medication. ECF No. 49-6 at PageID.805. Plaintiff was released from custody at approximately 11:45 AM on April 28, 2019. ECF No. 45-6 at PageID.559.

Within minutes of being released from custody, Plaintiff suffered a grand mal seizure, resulting in a broken jaw and "invasive surgery resulting in his mouth being wired shut for a month among various other damages." ECF Nos. 45-11 at PageID.603; 45-12 at PageID.623–28.

B.

During the relevant period, Advanced Correctional Healthcare (ACH) had a contract to provide healthcare services to the Otsego County Jail (OCJ). ECF No. 45-2 at PageID.508–18 (beginning on May 5, 2016, and ending on May 31, 2017).

With respect to licensed practical nurses, like Reynolds, the contract specified that ACH would provide at least eight hours of on-site coverage per week, with any additional work hours—

---

[1] Kimberly Reynolds was a licensed practical nurse who provided medical services to the Otsego County Jail—on and off duty. *See* ECF Nos. 45-3 at PageID.521, 523; 96-10 at PageID.2404–05.
[2] Under their contract, Otsego County and ACH both had duties to maintain inmate medical records. ECF No. 45-2 at PageID.510. Otsego County had to provide any such records to ACH upon request. *Id.* at PageID.512.

whether on-site or off-site—billed to Otsego County. *See id.* at PageID.511. The contract also stipulated for biweekly on-site coverage and 24/7 telephone coverage by a physician or midlevel practitioner. *Id.*

The exchange of inmate information was also governed by the contract, requiring Otsego County to provide ACH with any information it needed "to adequately perform its obligations" and any inmate healthcare records that ACH requested to defend against third-party claims involving ACH's medical services at the OCJ. *Id.* at PageID.512.

The contract indemnified both ACH and Otsego County against losses or damages caused by the "negligent, reckless, intentional, or deliberately indifferent conduct of [the other party] or its employees" regarding the "medical treatment or care provided by ACH." *Id.* at PageID.516.

And for cases involving "civil rights liability," like this case, ACH had to maintain at least $1,000,000 of insurance coverage for itself and Otsego County. *Id.* at PageID.516.

### C.

On December 8, 2020, Plaintiff filed a complaint alleging Reynolds, Otsego County, Officer Huff, and the City of Gaylord were deliberately indifferent to his serious medical needs by failing to administer his Keppra while he was detained at the OCJ. ECF No. 1 at PageID.2–9.

Thirteen months later, Reynolds was the only remaining defendant. In March 2021, Reynolds filed a motion to dismiss with an affidavit indicating she "was not directly or indirectly involved in the occurrence." ECF No. 15-2 at PageID.153. In May 2021, the motion to dismiss was denied, and the parties commenced discovery. ECF No. 22. For reasons not reflected in the record, Plaintiff stipulated to dismiss his claims against Gaylord and Officer Huff in December 2021, ECF No. 29, and his claims against Otsego County in January 2022, ECF No. 36.[3]

---

[3] Plaintiff's stepfather is one of Otsego County's prosecuting attorneys. ECF No. 38 at PageID.432.

On January 24, 2022, Plaintiff filed a motion to amend the complaint, keeping his claim against Reynolds and adding a *Monell* claim against her employer, ACH, for failure to train and to have a sufficient policy. ECF Nos. 30; 30-2 at PageID.282–89. Plaintiff's motion was granted, *Victor v. Reynolds*, 582 F. Supp. 3d 516, 519 (E.D. Mich. 2022).

Thus, Plaintiff now alleges Reynolds and ACH violated the Fourteenth Amendment and were grossly negligent to his serious medical needs by depriving him of his seizure medication while he was in the Otsego County Jail. ECF No. 38.

### D.

In February 2022, less than a month after the parties stipulated to extend the discovery deadline by three months, Defendants filed a motion for summary judgment. ECF No. 45. With two months remaining for discovery, Plaintiff filed a Rule 56(d) motion to defer summary judgment until discovery was complete, ECF No. 47, followed by a motion to compel production of numerous phone records, staffing schedules, and other documents, ECF No. 54. Defendants attempted to quash the discovery requests. ECF No. 55.

In June 2022, Magistrate Judge Patricia T. Morris denied Defendants' motions, granted Plaintiff's motions, and directed Defendants to produce the requested evidence by July 29, 2022. *See* ECF No. 64. In sum, without the evidence that Defendants failed to produce, Plaintiff could not present sufficient facts to oppose Defendants' claim that the officers did not contact Reynolds for permission to administer Plaintiff's seizure medication on April 28, 2019.

Three days before discovery would end, Defendants' first motion for summary judgment was denied, and the Parties were granted leave to file a second round of motions for summary judgment, due by October 12, 2022. ECF No. 67 at PageID.1327.

Yet more discovery issues followed. In sum, Plaintiff filed a motion to compel or for default judgment, arguing Defendants abused the discovery process by failing to comply with the court's orders and obstructing Plaintiff's requests. ECF No. 69. The most relevant issue here is that Plaintiff again requested production of any relevant staffing schedules and documents that would prove that Reynolds was not involved in the underlying incident—for example, her phone records. *See* ECF No. 69 at PageID.1332. Instead of providing such presumably dispositive evidence, Defendants ignored Plaintiff's discovery requests and sent an ACH employee to a deposition claiming to be the most knowledgeable person at the company—who testified that she knew nothing of significance because she did not work at ACH during the relevant time. *E.g.*, *id.* at PageID.1339 (internal citation omitted) ("Q. Who was the regional nurse manager on Sunday, April 28, 2019? A. I don't know. Q. Who's the back-up call on 4/28/2019? A. I don't know. Q. Okay. Did you diligently search your records to find out that information? A. I did not.").

Without completing discovery their discovery obligations, Defendants filed a second summary-judgment motion, again asserting that Reynolds was not involved in the underlying incident, ECF No. 70, followed by a motion for Rule 11 sanctions against Plaintiff for being "unwilling to dismiss L.P.N. Reynolds upon receiving [her] Affidavit of Non-Involvement,"[4] ECF No. 77 at PageID.1804. That is, Defendants twice sought summary judgment based on an affidavit from Reynolds that she was not involved in the incident rather than producing the evidence Plaintiff requested that would prove whether Reynolds was involved.

In December 2022, Judge Morris issued a report recommending sanctions against Defendant for failing to provide (1) "documented 'instances of complaints' regarding 'inadequate

---

[4] This Court did not find—nor did Defendants provide—any precedent sanctioning a plaintiff for not voluntarily dismissing a defendant.

medical care'" and (2) "the scheduling information and phone records of the backup practitioners." ECF No. 83 at PageID.2022. She thus recommended that this Court "extend discovery, find that the Defendants partially violated the Court's order in (ECF No. 64), and warn Defendants that further violations . . . may result in more severe sanctions." *Id.* at PageID.2013–25. Plaintiff's objections to the report were overruled, and Defendants did not object. *Victor v. Reynolds*, No. 1:20-CV-13218, 2023 WL 112459, at *2–6 (E.D. Mich. Jan. 5, 2023).

Instead of being sanctioned with a default judgment, however, Defendants were directed to cure their discovery violations by January 30, 2023, and to take the following two facts as provisionally established for purposes of the case until conclusive evidence proved otherwise:

> (1) "ACH has had some instances of complaints that it either provided inadequate medical care or had inadequate staffing for a prison facility in the Midwest region since 2017."
> (2) "One of the corrections officers supervising Plaintiff's detention called one of ACH's employees to seek permission to administer Plaintiff's medication."

*Id.* at *5.

Reynolds's involvement remained a mystery. In early 2023, Defendants filed a motion for reconsideration that again tried to shift the focus from Reynolds to "the [scheduled] on-call provider." ECF No. 87 at PageID.2084. Then they filed a notice stating they satisfied the discovery order as directed, ECF No. 91, followed by a *third* motion for summary judgment asserting no dispute that Reynolds was not involved in the underlying incident. ECF No. 92.

There is still no conclusive evidence in the record proving whether an Otsego County correctional officer contacted Kimberly Reynolds for permission to administer Plaintiff's seizure medication on April 28, 2019.

## II.

Motions for reconsideration of nonfinal orders are disfavored and may be granted in only three circumstances: (1) a mistake that changes the outcome of the prior decision, (2) an intervening change in controlling law that warrants a different outcome, or (3) new facts that could not have been previously discovered warrant a different outcome. E.D. Mich. LR 7.1(h)(2).

Defendants' motion for reconsideration does not identify any intervening changes in controlling law or new facts. *See generally* ECF No. 87. So Defendants could only be arguing that this Court made a mistake that changes the outcome of the prior decision.

By failing to raise any arguments in response to the adopted report, Defendants not only forfeited their right to appeal the report's findings with respect to their old arguments but also forfeited their right to raise any new arguments to contest the adoption of the report. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009) ("[A] party does not preserve an argument by raising it for the first time in a motion for reconsideration or rehearing."); *Roger Miller Music, Inc. v. Sony/ATV Publ'g,*, 477 F.3d 383, 395 (6th Cir. 2007) ("[P]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued."). Simply put, Defendants have no available arguments to raise in a motion for reconsideration, so their Motion for Reconsideration must be denied. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1012 (6th Cir. 2022) (holding that forfeited arguments may only be considered "in civil cases in 'exceptional' circumstances or when a 'plain miscarriage of justice' would otherwise result" (quoting *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 445 (6th Cir. 2021))).[5] That leaves Defendants' third motion for summary judgment.

---

[5] Similarly, Defendants acknowledge that they provided Plaintiff with all the discovery they were directed to provide, making their motion for reconsideration moot. *See generally* ECF No. 87.

### III.

After filing two premature motions for summary judgment without completing discovery, Defendants' third summary-judgment motion makes two arguments. *See generally* ECF No. 92.

### A.

First, Defendants once again assert a single argument with respect to Plaintiff's Eighth Amendment claim against Reynolds: that she "was completely and totally uninvolved with the facts of this case." *Id.* at PageID.2149 (emphasis omitted).[6] To that end, they illogically argue Reynolds could not have been called based on the staffing schedule for on-call nurses, the contract between ACH and Otsego County, and ACH's internal policies. *Id.* at PageID.2150–52.

However, at least 10 items of evidence collectively suggest Reynolds was called and instructed the Otsego County correctional officers not to administer Plaintiff's seizure medication:

1. Otsego County's sworn interrogatory answers stated that "ACH Nurse Kimberly Reynolds was on call during the time Plaintiff was in Jail on April 28, 2019." ECF No. 96-7 at PageID.2378–79.[7]
2. Otsego County's sworn interrogatory answers stated that Reynolds "was or should have been responsible for making the decision of whether to administer Plaintiff his seizure medication." ECF No. 96-7 at PageID.2378–79.
3. Correctional Officer Trey Leach testified that he "believe[s] it would have been Nurse Reynolds" who "would have been the nurse that [he] could have called" that night. ECF No. 96-9 at PageID.2396.
4. Leach testified that he "believe[s] Officer [Tony] Tallent attempted to call Nurse Reynolds" for permission to administer Plaintiff's medication that night. ECF No. 96-9 at PageID.2396.
5. Plaintiff testified that he then requested his medication from the OCJ Correctional Officers, who said that "they were going to contact the nurse to see if [he] could take it." ECF No. 96-4 at PageID.2347.

---

[6] Although an Eighth Amendment deliberate-indifference claim also has an objective element, Defendants do not contest it here. *See Nichols v. Kaure*, No. 1:23-CV-10694, 2023 WL 2746789, at *2 (E.D. Mich.), *relief from j. denied*, 2023 WL 3378994 (E.D. Mich. May 2, 2023).

[7] Although Captain Webber later testified that his signed interrogatory answers were "incorrect" yet based on his understanding that Reynolds "had in the past said that [he] could call her" *see* ECF No. 96-10 at PageID.2404–05, such "witness credibility is quintessentially a question of fact for the jury," *United States v. Jackson*, 918 F.3d 467, 479 (6th Cir. 2019) (citation omitted).

6. Correctional Officer Sullivan informed Plaintiff at 4:00 AM that he would have given Plaintiff the seizure medication, "but the nurse did not okay it." ECF No. 96-4 at PageID.2348.
7. Leach, who was on duty, testified that "in the past" he "had to call Nurse Reynolds . . . overnight about something like this" while she was off duty. ECF No. 96-9 at PageID.2396.
8. Captain Brian Webber, who was also on duty, testified that Nurse Reynolds made herself available for contact while she was off duty. *See* ECF No. 96-10 at PageID.2404–05.
9. Defendant ACH's person most knowledgeable, Dr. Bresnahan, testified that off-duty "nursing staff" would "answer their phones if they could be helpful" but formally are "not on call." ECF No. 96-11 at PageID.2430.
10. Defendants' two premature motions for summary judgment were filed before discovery was completed and without complying with its discovery obligations. *See* ECF Nos. 67; 86.

*See also Victor v. Reynolds*, No. 1:20-CV-13218, 2023 WL 112459, at *20 (E.D. Mich. Jan. 5, 2023) (collecting four questions of fact).

On top of all that, "[o]ne of the corrections officers supervising Plaintiff's detention called one of ACH's employees to seek permission to administer Plaintiff's medication." *Victor v. Reynolds*, No. 1:20-CV-13218, 2023 WL 112459, at *5 (E.D. Mich. Jan. 5, 2023).

Defendants nevertheless contend that the officers failed to "follow the policy on the date in question" by not calling "the ACH on-call provider." ECF No. 92 at PageID.2154. True, Defendants have provided phone records of a nurse practitioner the officers *should* have called. ECF Nos. 70-2 at PageID.1450–51; 70-3 at PageID.1469–70; 87-2 at PageID.2095; 87-4 at PageID.2103–06.

But that merely begs the question: Did the officers call Kimberly Reynolds? Yet Defendants, who undoubtedly would possess such information, have not produced any evidence that would provide a conclusive answer—like Reynolds's phone records. And, as explained above, the contract between ACH and Otsego County contemplates compensation for off-site coverage provided by nurses like Reynolds. *See* ECF No. 45-2 at PageID.511.

In sum, the record evidence could reasonably lead to the conclusion that the officers called Kimberly Reynolds to request permission to give Plaintiff his Keppra, leaving a reasonable jury to conclude that Reynolds "subjectively perceived facts from which to infer *substantial risk* to [Plaintiff] and that she did in fact draw the inference" and then deliberately ignored it. *Parsons v. Caruso*, 491 F. App'x 597, 603–05 (6th Cir. 2012) ("Viewing the facts and drawing all reasonable inferences in favor of [plaintiff], [the nurse]'s failure to administer [plaintiff's seizure medication], even if she lacked intent or knowledge that harm would actually result, would exceed negligence and rise to the level of 'recklessness' as required under the deliberate indifference standard." (quoting *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994))).

Because there are unresolved genuine disputes of fact with respect to Reynolds's role in the events, including whether she was contacted by the correctional officers and was deliberately indifferent to Plaintiff's medical needs, Defendants' Motion for Summary Judgment will be denied with respect to Plaintiff's Eighth Amendment deliberate-indifference claim.

**B.**

To contest Plaintiff's *Monell* claim against ACH, Defendants again argue Reynolds "was not deliberately indifferent to Plaintiff's medical needs." ECF No. 92 at PageID.2152. But there is a genuine dispute of fact with respect to Reynolds's deliberate indifference, as discussed above. *See* discussion *supra* Section III.A. Therefore, Defendants' first argument fails. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Where the identified policy is itself facially lawful, the plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" (quoting *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Defendants also assert ACH was not deliberately indifferent to Plaintiff's medical needs. ECF No. 92 at PageID.2152–55. Plaintiff may demonstrate that ACH was deliberately indifferent by showing that it either (1) "failed to act 'in response to repeated complaints of constitutional violations by its officers,' . . . . such that it 'was clearly on notice that the training in this particular area was deficient and likely to cause injury,'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)); or (2) failed to train its personnel when the need for training "[was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need," *id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The latter theory is often called "single-incident liability" because it does not require a pattern. *Id.* Here, there is a genuine dispute of fact on both theories.

Relevant to the pattern theory, Defendants furnished a list of more than 35 incidents where ACH caused deaths, suicides, seizures, or some combination of them by failing to provide medication to a detainee for a health concern. ECF No. 96-2 at PageID.2217–322. In 2014 for instance, an inmate complained that he was not provided his seizure medication, resulting in "personal injuries and damages." *Id.* at PageID.2227. In 2016, an inmate complained that ACH failed "to monitor and provide proper care for seizure." *Id.* at PageID.2221. In 2017, a detainee complained that ACH denied treatment for his "seizure disorder." *Id.* at PageID.2246. And in 2020, an inmate complained of ACH's improper treatment of a "seizure disorder," causing "seizures in the jail" and Keppra medication being administered. *Id.* at PageID.2313. Based on this evidence of "prior instances of unconstitutional conduct," there is a genuine issue of fact as to whether ACH "has ignored a history of abuse and was clearly on notice that the training in this particular area

was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citing *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).

And Plaintiff has demonstrated a genuine question of fact on his single-incident theory. There is no question that the need for training was obvious enough to support single-incident liability. *Victor v. Reynolds*, 582 F. Supp. 3d 516, 524 (E.D. Mich. 2022) ("[F]or a private healthcare provider that specifically contracts to provide medical personnel to a prison for the purpose of approving medication requests for inmates, it is quite obvious that the provider would need to provide adequate training on making such decisions." (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 (6th Cir. 2006))). Further, Reynolds testified that ACH trains its nurses to determine whether to administer seizure medication to an inmate after a correctional officer requests permission to administer it. ECF No. 30-4 at PageID.302 (testifying that, if she was called, then she was trained to seek approval to administer medication from "the doctor that worked for ACH at that time"). And, as explained earlier, there is a question of fact as to whether the officers called Reynolds for such permission. *See* discussion *supra* Section III.A. In sum, ACH's nurses—including Reynolds—"received some training," and there is a question of fact as to whether ACH "was on notice that, absent additional training, it was so highly predictable that [one if its nurses] would [fail to administer adequate medical care] as to amount to conscious disregard for [Plaintiff's] rights," *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 567 (6th Cir. 2011) (citing *Connick v. Thompson*, 563 U.S. 51, 71 (2011)).

Accordingly, both of Plaintiff's theories of ACH's deliberate indifference will survive summary judgment.

## C.

Defendants also contest proximate cause. ECF No. 92 at PageID.2153 (citing ECF Nos. 30 at PageID.266–67; 30-2 at PageID.286). They argue that, though ACH had a contract with Otsego County requiring the on-call nurse practitioner to provide routine and emergency medical services upon request, the correctional officers did not call ACH's on-call practitioner for permission to administer Plaintiff's medication. *Id.* at PageID.2154. Therefore, Defendants conclude, Plaintiff's *Monell* claim against ACH "must be dismissed." *Id.* at PageID.2155.

But Defendants' argument is inapposite. Based on Plaintiff's claims, the relevant inquiry is whether the OCJ officers contacted *Reynolds*—not other personnel from ACH's on-call list. Unfortunately, Defendants were not responsive during the discovery process, and no evidence has been produced that would definitively establish whether the officers called Reynolds for permission to administer Plaintiff's Keppra. *See* discussion *supra* Section III.A; *see also Victor v. Reynolds*, No. 1:20-CV-13218, 2023 WL 112459, at *5 (E.D. Mich. Jan. 5, 2023) ("Indeed, even after Judge Morris found that Defendants violated her order, they have not produced what she directed."). If it is determined that Reynolds instructed the officers not to administer Plaintiff's seizure medication after they sought permission to do so—as two of the officers testified[8]—then the jury could reasonably conclude that Reynolds caused Plaintiff's injuries by being deliberately indifferent to his medical needs.

Finally, Defendants argue "ACH provided training to [OCJ correctional officers] on the procedure for calling the on-call practitioner and their testimony regarding the procedure was consistent in each deposition." ECF No. 92 at PageID.2153.

---

[8] *See also* discussion *supra* Section III.A & note 7.

But this strawman also misses its mark. As explained earlier, the issue is not whether ACH trained the OCJ's correctional officers but whether ACH properly trained *Reynolds*. Although Reynolds claimed to have been trained by ACH, she did not specify when. *See* ECF No. 30-4 at PageID.302. In addition, Defendants have failed to produce any documentation of ACH's training of the OCJ's personnel. Moreover, there is a separate question of fact as to whether ACH properly trained Otsego County's correctional officers since 2016. *Compare* ECF No. 96-10 at PageID.2407–08 (testimony of Captain Brian Webber) (testifying that ACH provided approximately 6–8 hours or training when it entered the contract with Otsego County in 2016 and provided annual training afterward), *with* ECF No. 96-12 at PageID.2452 (testimony of Tony Tallent) (testifying that he does not "recall" any ACH training after the initial session in 2016), *and* ECF No. 96-9 at PageID.2396 (testimony of Trey Leach) (testifying that the medication process involved him calling either Reynolds, the pharmacist, or the local emergency room). Therefore, there is ample reasonable support for ACH's *Monell* liability. *See* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 32, 35 (2022) (attributing a person's statement to an agency "only if reasonable to do so").

In sum, genuine questions of fact have been raised as to each of Defendants' arguments.

### IV.

Accordingly, it is **ORDERED** that Defendants' Motion for Reconsideration, ECF No. 87, is **DENIED AS MOOT**. Further, it is **ORDERED** that Defendants' Third Motion for Summary Judgment, ECF No. 92, is **DENIED**.

**This is not a final order and does not close the above-captioned case**.

Dated: June 23, 2023                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge