UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL VICTOR,

                  Plaintiff,                        Case No. 1:20-cv-13218

v.                                           Honorable Thomas L. Ludington
                                            United States District Judge
KIMBERLY REYNOLDS, and ADVANCED
CORRECTIONAL HEALTHCARE, INC.,

                                          Honorable Patricia T. Morris
                  Defendants.               United States Magistrate Judge
_____/

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION IN *LIMINE* WITHOUT PREJUDICE; (2) DENYING DEFENDANTS' MOTION IN *LIMINE* TO EXCLUDE NEGATIVE EVIDENCE WITHOUT PREJUDICE; (3) DENYING DEFENDANTS' MOTION IN *LIMINE* TO LIMIT PLAINTIFF'S DAMAGES WITH PREJUDICE; (4) GRANTING IN PART DEFENDANTS' MOTION IN *LIMINE* TO PRECLUDE HEARSAY STATEMENTS; (5) GRANTING IN PART DEFENDANTS' MOTION IN *LIMINE* TO PRECLUDE INSURANCE STATEMENTS, PRIOR LAWSUITS, AND RESPONDEAT SUPERIOR; AND (6) DENYING DEFENDANTS' MOTION IN *LIMINE* TO PRECLUDE OFFICER LEACH'S TESTIMONY WITHOUT PREJUDICE**

      Currently before this Court are six motions in *limine*. One motion was filed by Plaintiff Michael Victor, who suffered a seizure shortly after being released from Otsego County Jail where he alleges staff withheld his anti-seizure medication. The other five motions were filed by Defendants Advanced Correctional Healthcare Inc. (ACH)—the jail's inmate healthcare contractor—and Nurse Kimberly Reynolds, who worked for ACH at the time. For the reasons discussed below, Plaintiff's motion in *limine* and two of Defendants' motions in *limine* will be denied without prejudice, and Defendant's motion in *limine* to limit Plaintiff's damages will be denied with prejudice. Defendant's remaining two motions in *limine* will be granted in part, to the extent they seek to exclude certain hearsay statements, evidence of Defendants' liability insurance, and suggestions of respondeat superior liability.

- 1 -

**I.**

Just after midnight on April 28, 2019, Plaintiff Michael Victor was arrested by Gaylord Police Officer Blake Huff for disorderly conduct and resisting while Plaintiff was intoxicated. ECF No. 38 at PageID.432. Officer Huff brought Plaintiff to the Otsego County Jail (OCJ) and contacted Plaintiff's family. *Id.* Around 1:00 AM, Plaintiff's mother arrived at OCJ to deliver Plaintiff's Keppra—an anti-seizure medication Plaintiff took twice daily to treat his epilepsy. *Id.*; ECF Nos. 70 at PageID.1421–22; 45-5 at PageID.541; 45-11 at PageID.598, 601, 609. Plaintiff's mother gave the Keppra to Officer Huff and stressed that, without his medication, Plaintiff "would have a seizure" because his last dose of medication was taken almost eleven hours earlier.[1] ECF Nos. 38 at PageID.433; 45-11 at PageID.606. Officer Huff gave the medication—and conveyed its importance—to either Officer Trey Leach or Officer Tony Tallent, the only two correctional officers working at OCJ at the time. *Id.*; *see also* ECF No. 45-5 at PageID.541–42. And around 4:00 AM, Officers Leach and Tallent were relieved by Officer Scott Musall and Officer Joe Sullivan. *See* ECF No. 49-6 at PageID.805.

But the medication never made it to Plaintiff. ECF No. 38 at PageID.433. Minutes after Plaintiff was released from OCJ around 11:30 AM on April 28, 2019, Plaintiff suffered a seizure, fell face-first onto the cement, and broke his jaw. *Id.* at PageID.435–36. Plaintiff alleges that OCJ personnel told him his mother dropped off his medication and that they "were going to contact the nurse to see if [he] could take it." ECF No. 45-11 at PageID.610. Plaintiff further testified that he asked for his medication multiple times, but Officer Sullivan eventually told him that the "nurse did not okay it" because Plaintiff "had alcohol in [his] system." *Id.* at PageID.611. Plaintiff also

---

[1] Indeed, Plaintiff avers he suffered seizures while he was previously confined at OCJ and did not have access to his Keppra. ECF No. 45-11 at PageID.596–97.

testified that OCJ officers taunted him by "shaking" his medication at him and telling him he could not have it. *Id.* at PageID.617.

Like many correctional facilities throughout the country, OCJ does not have its own nurses or medical staff. Instead, it contracts with Advanced Correctional Healthcare, Inc. (ACH) which assigns practitioners to service each facility.[2] *See* ECF No. 45-2. Plaintiff alleges that Nurse Kimberly Reynolds was the ACH practitioner responsible for denying his medication on April 28, 2019. *See generally* ECF No.38. Officer Leach testified that, although he cannot remember *whether* she was called, Nurse Reynolds would have been the ACH practitioner called on April 28, 2019. ECF No. 45-7 at PageID.564. Indeed, Otsego County's initial answers to Plaintiff's first interrogatories confirmed "ACH Nurse Kimberly Reynolds was on call during the time Plaintiff was in [OCJ] on April 28, 2019." ECF No. 45-8.

But Nurse Reynolds submitted an affidavit of non-involvement, ECF No. 45-3; testified under oath that she was not on call and did not know Plaintiff, ECF No. 45-4 at PageID.529; and submitted payroll timesheets which confirmed she did not work at OCJ on April 28, 2019. ECF No. 45-3 at PageID.523. Defendants have since identified nurse Courtney Brinkman as the primary ACH on-call practitioner scheduled to serve OCJ on April 28, 2019. ECF Nos. 55-3 at PageID.1042; 70 at PageID.1421; 70-2 at PageID.1444, 1450–51. Yet Nurse Brinkman's phone records reflect that she did not receive any calls from OCJ that day, ECF No. 70 at PageID.1425–26, and her payroll timesheets reflect that she did not work that morning. ECF No. 74-7. Defendants also produced the timesheets of all other identified on-call practitioners who may have

---

[2] ACH advertises as "the nation's largest jail contract management company" with contracts with over 370 correctional institutions across 22 states, servicing over 34,000 incarcerated individuals daily. *About*, ADVANCED CORRECTIONAL HEALTHCARE, INC., https://www.advancedch.com/about https://www.advancedch.com/about (last visited Jan. 14, 2024) [https://perma.cc/9UBB-X7CN].

plausibly been called by OCJ personnel on April 28, 2019. ECF No. 141. But none of these timesheets show that any practitioner worked that day. *See id.*

On December 8, 2020, Plaintiff filed a Complaint alleging Eighth Amendment deprivations against (1) Otsego County, (2) Officer Huff, (3) the City of Gaylord, (4) ACH, and (5) Nurse Reynolds, seeking to hold each Defendant jointly and severally liable.[3] ECF No. 38. But only Nurse Reynolds and ACH remain, as Plaintiff has stipulated to the dismissal of Officer Huff , the City of Gaylord, and Otsego County without prejudice. ECF Nos. 29; 36. Trial is currently scheduled for March 12, 2024. ECF No. 115. On January 10, 2024, Plaintiff filed his Motion in *Limine* seeking to exclude nine categories of evidence. ECF No. 117. That same day, Defendants filed five Motions in *Limine*. ECF Nos. 118; 119; 120; 121; 122.

## II.

"A 'motion *in limine*' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs., L.P.*, No. 1:18-CV-11260, 2022 WL 1837071, at *2 (E.D. Mich. June 3, 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). Motions in *limine* are designed "to narrow the issues remaining" and "minimize disruptions," *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999), and help ensure "evenhanded and expeditious management of trials." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017) (internal citations

---

[3] Notably, the contract between ACH and Otsego County included parallel indemnification provisions, in which ACH agreed to "hold harmless and indemnify the COUNTY and SHERIFF (together with their respective employees) against any loss or damage . . . solely caused or necessitated by the negligent, reckless, intentional, or deliberately indifferent conduct of ACH or its employees, which is related to medical care provided by ACH" and Otsego County agreed to "hold harmless and indemnify ACH (together with its respective employees) against any loss or damage . . . solely caused or necessitated by the negligent, reckless, intentional, or deliberately indifferent conduct of the COUNTY or its employees, which is related to medical care provided by ACH." ECF No. 45-2 at PageID.516 (emphasis in original).

omitted). Indeed, "[a]lthough neither the Federal Rules of Evidence, nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion i*n limine*, the Supreme Court has authorized district courts to rule on motions *in limine* "pursuant to the district court's inherent authority to manage the course of trials." *Id.* (citing *Luce*, 469 U.S. at 41 n. 4).

A district court should grant a motion *in limine* to exclude evidence "only when [that] evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *Indiana Ins. Co. v. Gen. Elec. Co*., 326 F. Supp. 2d 844 (N.D. Ohio 2004)). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (internal citations omitted); *see also Good v. BioLife Plasma Servs*., L.P., 605 F. Supp. 3d 947, 955 (E.D. Mich.), *reconsideration denied*, 647 F. Supp. 3d 555 (E.D. Mich. 2022); *Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc*., 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling . . . until trial[.]").

Importantly, the denial of a motion *in limine* seeking to exclude evidence "does not necessarily mean that the court will admit the evidence at trial." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017). Instead, "[d]enial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Indiana Ins. Co. v. Gen. Elec. Co*., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

### III.

### A.  Legal Overview of Plaintiff's Claims

Before turning to the merits of the motions in *limine*, it is worth pausing to note Plaintiff's two claims. Indeed, these claims—and Plaintiff's necessary proofs at trial—furnish important

context for assessing the relevance, probative value, and general admissibility of proffered evidence at this pretrial stage.

First, Plaintiff alleges Defendant Reynolds was deliberately indifferent to his serious medical needs, in violation of the Eight Amendment and 42 U.S.C. § 1983. ECF No. 38 at PageID.436–39. To succeed on this claim, Plaintiff must prove, by a preponderance of the evidence:

(1) Plaintiff's Keppra prescription was an objectively serious medical need. A serious medical need is a condition that a doctor would believe requires treatment or something so obvious that even someone who is not a trained doctor would recognize that it requires treatment.

(2) On April 28, 2019, Otsego County Jail staff contacted Nurse Reynolds and told her that Plaintiff was epileptic, was prescribed anti-seizure medication, and that Plaintiff's medication was available to give to him.

(3) Nurse Reynolds consciously failed to provide Plaintiff his anti-seizure medication, Keppra. In deciding this element, the jury may consider the seriousness of Plaintiff's medical need, and whether Nurse Reynolds had legitimate reasons to deny treatment. Further, because Nurse Reynolds is a medical professional, the jury may infer that she consciously failed to take reasonable measures if her actions or inactions were a substantial departure from accepted professional judgment.

(4) Nurse Reynolds acted "under the color of law;"[4] and

(5) Nurse Reynolds's deliberate conduct was the proximate cause of Plaintiff's injuries.

*See* Fed. Civ. Jury Instr. 7th Cir. 7.17 (2021).[5]

Plaintiff also seeks to hold ACH liable as a municipality for the alleged Eighth Amendment violation. ECF No. 38 at PageID.439–46. Specifically, Plaintiff advances two theories of *Monell* liability: a "custom or practice" theory and a "failure to train" theory. *See* ECF No. 96 at

---

[4] "The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018).

[5] Jury instructions have not yet been finalized for the upcoming trial. This Court relies on the Seventh Circuit's model civil jury instructions solely to place the Parties' motions in *limine* in context with the likely evidentiary burdens each Party will bear at trial.

PageID.2205–12. Under *both* theories, Plaintiff must prove, as a threshold matter, an underlying constitutional violation: that an ACH employee—not necessarily Nurse Reynolds—was deliberately indifferent to his serious medical needs in violation of the Eight Amendment. *See Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017) (noting municipalities cannot be liable under § 1983 absent an underlying constitutional violation by its officers); *Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, No. 1:21-CV-12896, 2023 WL 6367687, at *24 (E.D. Mich. Sept. 29, 2023), *reconsideration denied*, No. 1:21-CV-12896, 2023 WL 7993424 (E.D. Mich. Nov. 17, 2023) (same). In addition to this threshold proof, under Plaintiff's first "custom or practice" *Monell* theory, Plaintiff must prove by a preponderance of the evidence:

(1) ACH had a persistent and widespread custom or practice of withholding inmate medication, such that this custom or practice was effectively ACH's standard operating procedure. A persistent and widespread pattern may be a custom even if ACH did not formally approved it, so long as Plaintiff proves by a preponderance of the evidence that ACH knew about the pattern and allowed it to continue.

(2) ACH's custom or practice caused or was the "moving force" behind Plaintiff's ultimate injury.

*See* Fed. Civ. Jury Instr. 7th Cir. 7.24 (2021); Fed. Civ. Jury Instr. 9th Cir. 9.5 (2022); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 426 U.S. 658 (1978).

Under Plaintiff's second, "failure to train" theory of *Monell* municipal liability, *see* ECF No. 101 at PageID.2502–03, in addition to proving an underlying constitutional violation, Plaintiff must prove by a preponderance of the evidence that:

(1) ACH employees frequently responded to inmate requests for medication but ACH's training program was inadequate to train its employees on how to respond to inmate mediation requests in a way that conforms to the standard of care.

(2) ACH knew it was highly predicable that its employees would be deliberately indifferent to serious inmate medical needs without more or different training because there was a pattern of similar constitutional violations or it was highly predicable even without a pattern of similar constitutional violations.

(3) ACH's inadequate training caused one of its employees to consciously disregard Plaintiff's serious medical needs by withholding his anti-seizure medication.

*See* Fed. Civ. Jury Instr. 7th Cir. 7.25 (2021); Fed. Civ. Jury Instr. 9th Cir. 9.8 (2022); *see also Connick v. Thompson*, 563 U.S. 51 (2011). With this context in mind, this Court turns to the motions in *limine*.

## B. Plaintiff's Motion in *Limine*

Plaintiff filed one omnibus motion in *limine* seeking to exclude nine categories of evidence. ECF No. 117. But eight of these categories are too broad for this Court to assess and the one category that is sufficiently specific—evidence of Plaintiff's underlying arrest—is admissible. So Plaintiff's motion in *limine* will be denied without prejudice.

### 1.

Plaintiff first seeks to preclude Defendants from "making any arguments or introducing evidence regarding Plaintiff's underlying arrest" because such evidence "would be irrelevant, confusing to the jury, and highly prejudicial to the Plaintiff" under Rule 403. ECF No. 117 at PageID.2766. But evidence concerning how, when, and why Plaintiff was arrested is relevant and its probative value is not substantially outweighed by unfair prejudice.

Under Rule 401 of the Federal Rules of Evidence, "evidence is relevant if: (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Unless expressly excluded by another evidentiary rule, relevant evidence is admissible. FED. R. EVID. 402. Rule 403, however, allows courts to exclude relevant evidence "if its probative value is *substantially* outweighed" by either (1) *unfair* prejudice; (2) confusing the issues; (3) misleading the jury; (4) undue delay; (5) wasting time; or (6) needlessly presenting cumulative evidence. FED. R. EVID. 403 (emphasis added). But evidence is not excluded as being unfairly prejudicial merely because it damages the

party against whom it is offered. Rather, "unfair prejudice" under Rule 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Evidence regarding why, when, and how Plaintiff was arrested—for disorderly conduct and resisting while intoxicated—is relevant and has significant probative value. Plaintiff had the opportunity to take his Keppra both hours before his arrest and immediately after his release from OCJ on April 28, 2019. *See* ECF No. 48-7 at PageID.727–29 (pre-arrest), PageID.735 (post-release). His *drunk and disorderly* arrest is relevant to Plaintiff's credibility and increases the likelihood that Plaintiff's decision to drink caused the injuries he alleges, thus potentially limiting the damages he could recover. Plaintiff testified that he normally takes his Keppra around 9:00 PM but, on the evening before his arrest, Plaintiff chose not to take his medication. *See id.* at PageID.727, 729, 743. Instead, Plaintiff was at a friend's house drinking alcohol from around 3:00 PM to about 9:00 PM, when he and his friends proceeded to a bar. *Id.* at PageID.728. Plaintiff himself testified that he did not know how Keppra interacted with alcohol, and agreed that it was his responsibility to know Keppra's side effects. ECF No. 45-11 at PageID.612. Indeed, Plaintiff testified that, although drinking would not increase his likelihood of seizures, his doctor told him not to drink excessively while taking Keppra, *id.* at PageID.616, yet he conceded that he drank "about a 12-pack" of beer before his arrest the night of April 27, 2019. *Id.* at PageID.612. On these facts, Plaintiff's decision to drink an excessive amount of alcohol—conduct which directly contributed to his arrest—may have also contributed to his decision not to take Keppra that evening, before he was arrested and detained. Indeed, if Plaintiff had taken his Keppra at 9:00 PM the night before his arrest, he may not have had a seizure minutes after he was released from OCJ.

Moreover, the details of Plaintiff's arrest for disorderly conduct and resisting while intoxicated are relevant because they may have contributed to why, as Plaintiff alleges, his medication was withheld: because Officer Huff testified that OCJ will "never administer any medication when a male subject is either intoxicated and/or they do not" receive clearance from ACH professionals. ECF No. 45-5 at PageID.544. And Plaintiff testified that OCJ officers told him the "nurse did not okay" his medication expressly because Plaintiff "had alcohol in [his] system." *Id.* at PageID.611.

The probative value of Plaintiff's arrest and preceding conduct is not substantially outweighed by *unfair* prejudice or any other Rule 403 prohibition. The jury will certainly hear testimony that Plaintiff was confined at OCJ when his medication was allegedly withheld, just before Plaintiff had a seizure. Not only does this minimize the prejudicial value of *why* Plaintiff was arrested, but it also suggests that, contrary to Plaintiff's argument, evidence of Plaintiff's arrest may *reduce* juror confusion rather than cause it—as the jury would more fully understand *why* Plaintiff was confined at OCJ when he alleges his medication was withheld. *See* ECF No. 117 at PageID.2766. Accordingly, Plaintiff's Motion in *Limine* to exclude evidence of his underlying arrest will be denied without prejudice.[6] To the extent Plaintiff wishes to object at trial, he is free to do so.

**2.**

In addition to evidence of his underlying arrest, Plaintiff seeks to exclude the following broad categories of evidence:

1. Any "personal opinions at trial" by parties, witnesses, or counsel "concerning
   (among other things) the Plaintiff's motivations or reasons for bringing its case"

---

[6] Plaintiff also seeks to exclude evidence of his underlying *prosecution* for the same reasons. ECF No. 117 at PageID.2766. But the record presently before this Court does not include any evidence of charges, prosecution, or conviction relating to Plaintiff's April 28, 2019 arrest.

or personal opinions about the case generally. ECF No. 117 at PageID.2766 (internal citation omitted).

2. Any statement "[t]hat the lawsuit has been investigated, contrived, or encouraged by the Plaintiff's attorneys." *Id.* at PageID.2767 (citing FED. R. EVID. 401 and FED. R. EVID. 403).

3. Any statement or evidence "[t]hat the Plaintiff or any other testifying witness has engaged in extraneous specific instances of bad conduct." *Id.* (citing FED. R. EVID. 608).

4. "Any reference to the probable testimony of a witness who is absent, unavailable, or not called to testify in this case." *Id.* (citing FED. R. EVID. 802).

5. "Any evidence or arguments of the effect of the case, verdict, or judgement on the Defendant[s] in regard to their financial capacity to pay." *Id.*

6. "Any argument that the jurors should put themselves in the position of Defendant[s]." *Id.*

7. "Any testimony as to what the law provides, and legal conclusions drawn by Defendant[s'] witnesses regarding what the law requires." *Id.* at PageID.2678 (citing FED. R. EVID. 402 and FED. R. EVID. 403).

8. "Any reference to the fact that the Plaintiff has filed a Motion in *Limine* requesting relief from the Court or that such relief has been granted by this Court." *Id.*

But these broad requests do not identify any *particular* pieces of evidence Plaintiff seeks to exclude. Instead, these objections recite statements of law and rules of evidence, seeking to exclude hypothetical would-be violations on behalf of opposing Counsel or adverse witnesses. "Plaintiff's broad approach seeking exclusion" of speculative categories of testimony at trial "prevents both [D]efendants and this Court from properly addressing their objections." *Fakhoury v. O'reilly*, No. 16-13323, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022); *see also* ECF No. 123 at PageID.2911–12. A motion in *limine* movant must "identify the particular evidence at issue and articulate with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground." *Fakhoury*, 2022 WL 909347, at *6 (internal quotations omitted). Where a motion in *limine* "simply asserts objections without tying them to specific evidentiary items," the Court is "well within its discretion" to deny the motion without prejudice. *Id.* (collecting cases); *see also Equal Emp. Opportunity Comm'n v. Proctor Fin., Inc*., 644 F. Supp. 3d 400, 413 (E.D. Mich. 2022); *CadleRock Joint Venture, L.P. v. Royal Indem*. Co., 872 F. Supp.

2d 592, 602 (N.D. Ohio 2012) (refusing to "make evidentiary decisions in a vacuum); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 518 F. Supp. 3d 1028, 1034 (S.D. Ohio 2021) (noting nonspecific motion in *limine* is a "bludgeon when the Federal Rules of Evidence call for a scalpel").

Accordingly, Plaintiff's Motion in *Limine* will be denied without prejudice as to these eight broad requests. Despite their overbreadth, the speculative types of testimony Plaintiff seeks to exclude are likely improper and Plaintiff is free to object at trial to the extent Defendants attempt to offer these types of testimony or evidence.[7]

### C. Defendants' Motions in *Limine*

In addition to Plaintiff's omnibus motion *in limine*, Defendants filed five motions in *limine*, each seeking to exclude distinct categories of evidence. *See* ECF Nos. 118; 119; 120; 121; 122. Each of Defendants' motions in *limine* will be discussed in turn.

### 1. The Burden of Proof

Defendants' first motion *in limine* concerns the burden of proof and seeks to confirm that they need not "prove a negative" at trial. ECF No. 118 at PageID.2782. Specifically, Defendants seek to preclude Plaintiff from:

> making any opening statements or arguments to the jury in any manner that allege or suggest that *Defendants cannot prove* or cannot produce any evidence that they were (a) *not* called about Plaintiff's medications, (b) *not* made aware of his medical conditions, or (c) that they did *not* deny his medications.

*Id.* at PageID.2775 (emphasis added).

---

[7] Defendants aver to "speak to the jury and present their case in chief and defenses in a manner . . . consistent with the Federal Rules of Evidence. Defendants do not intend to discuss insurance or ability to pay, not tell the jury to put themselves in the position of Defendants." ECF No. 123 at PageID.2911.

Defendants properly identify the burden of proof in a civil trial. Plaintiff has the burden of proving each element of his two deliberate indifference claims by a preponderance of the evidence, and it would be improper for Plaintiff to shift this burden to Defendants. *See Smolinksi v. Advanced Corr. Healthcare, Inc.*, No. 1:23-CV-10998, 2023 WL 6519257, at *4 (E.D. Mich. Oct. 5, 2023) But Defendants' first motion *in limine* suffers from the same lack of specificity as Plaintiff's omnibus motion in *limine*. *Fakhoury v. O'reilly*, at *6 No. 16-13323, 2022 WL 909347 (E.D. Mich. Mar. 28, 2022) ("Where a motion in *limine* simply asserts objections without tying them to specific evidentiary items, the Court properly may deny it as overbroad and insufficiently specific."). Instead of assessing the admissibility of speculative statements at this pretrial stage, the better course is to deny Defendant's first motion in *limine* without prejudice and allow Defendants to object at trial to the extent they believe Plaintiff improperly shifts the burden of proof.

## 2.  Limiting Plaintiff to Physical Damages

Defendants next seek to limit damages at trial to those directly related to Plaintiff's physical injuries, and to preclude Plaintiff from making any references at trial to nonphysical injuries such as "changes on Plaintiff's life, diminished mental capacity, inability to work, decrease in earning capacity, emotional distress damages, or any other previously unidentified special damages[.]" ECF No. 119 at PageID.2807. Defendants argue these non-physical damages are precluded under Civil Rule 9(g) and foreclosed by the following portions of Plaintiff's deposition testimony:

> **Defense Counsel**: "[I]s it your testimony here today that somehow you're different now than before you were before this incident, has this affected you in some way, are you unable to work, do you have diminished mental capacity?"
> **Plaintiff**: "No."
> . . .
> **Defense Counsel**: "I could have asked you this earlier, but you're not having any nightmares because of this injury[?]"
> **Plaintiff**: "No."
> **Defense Counsel**: "And you told me you're not afraid of cops, right?"
> **Plaintiff**: "No, I'm not afraid of cops."

**Defense Counsel**: "Okay. How has this incident changed your life."
**Plaintiff**: "It hasn't."
**Defense Counsel**: "Okay. So is it strictly—as we sit here today, are the medical, or the injuries as we call it, the damages that you allege you suffered from this strictly the physical injuries?"
**Plaintiff**: "Sitting here today, yes."

ECF No. 45-11 at PageID.607–08; *see also* ECF No. 119 at PageID.2802–03 (emphasis added).

To the extent Defendants argue Plaintiff should be barred from recovering "non-physical" damages as a matter of *law* because they have not been properly pleaded as "special damages" under Civil Rule 9(g), *see* ECF No. 119 at PageID.2804–06, Defendants ignore Plaintiff's pleadings and misunderstand the requirements of Civil Rule 9.

Civil Rule 9(g) requires a party to specifically plead "special damages." FED. R. CIV. P. 9(g). As Defendants note, "the purpose of [Rule] 9(g) is to provide the opposing party fair notice of the damage sought for the allegedly improper conduct." ECF No. 119 at PageID.2805 (citing *Roberts v. Graham*, 73 U.S. 578, 579 (1867)). Assuming without deciding that Plaintiff's "non-physical" injuries are special damages subject to Civil Rule 9(g),[8] Defendants have had notice of Plaintiff's alleged non-physical injuries for more than three years, since the inception of this litigation. These damages were sufficiently specifically stated. In both his first and amended, complaint, Plaintiff specifically alleged that Defendants' conduct *caused* him (1) serious physical

---

[8] "Special damages" are those that "result from some cause not notified to the defendant by the very description of the injury complained of, as necessarily resulting from it" or those which involve harms unique to the specific plaintiff that "any other person, under the same circumstances" would not have suffered to the same extent. *Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.*, 482 F. Supp. 2d 861, 869 (E.D. Mich. 2007) (internal quotations omitted). As Michigan courts explain, special damages are "the natural but not the necessary consequence of the defendant's conduct[.]" F*leet Business Credit, LLC v. Krapohl Ford Lincoln Mercury Co.*, 735 N.W.2d 644 (Mich. App. 2007). Notably, punitive damages—which Plaintiff also pleaded in all complaints—are not special damages subject to Rule 9(g) requirements. *Dorton v. Kmart Corp.*, 229 F. Supp. 3d 612, 620 (E.D. Mich. 2017); *Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.*, 482 F. Supp. 2d 861, 870 (E.D. Mich. 2007).

injuries including his grand mal seizure and subsequent corrective surgery; (2) loss of earnings, earning capacity and fringe benefits; (3) mental anguish; (4) physical and emotional distress; (5) humiliation; (6) mortification; (7) embarrassment; and (8) loss of professional reputation. ECF No. 38 at PageID.438–39, 446. Plaintiff also argues—and Defendants do not dispute— that Plaintiff provided Defendants with an itemized list of his alleged "non-physical" injuries throughout his initial disclosures and in response to a now-dismissed defendant's interrogatories. ECF No. 125 at PageID.3080; *see also* ECF No. 130. Indeed, Defendants denied these "non-physical" damages in their answer to the amended complaint, filed two years ago. ECF No. 44 at PageID.467, 469–70. And Plaintiff's operative complaint contained enough facts to plausibly suggest that Defendants' conduct caused the pleaded damages. *See generally* ECF No. 38.

To the extent Defendants argue that, in light of Plaintiff's deposition testimony, the *facts* are insufficient to allow Plaintiff to recover "non-physical" damages, the extent of Plaintiff's injuries are a question of fact to be decided by the jury at trial, not the undersigned at this pretrial stage. *See Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.,* 482 F. Supp. 2d 861, 870 (E.D. Mich. 2007); *see also Goldman v. Healthcare Mgmt. Sys., Inc*., 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008) ("Factual questions should not be resolved through motions in *limine*." (citing *Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246 (E.D. Mich. 1997))). Although Plaintiff's deposition testimony does not *foreclose* his recovery of non-physical damages, his significant admissions may be introduced at trial and properly considered by the jury in determining the extent of damages Plaintiff is owed, if any.

In sum, because Plaintiff provided sufficient notice of his "non-physical" damages through his pleadings and because the extent of these injuries is a fact question to be resolved by the jury, Defendants' second motion will be denied with prejudice.

### 3.  Hearsay Statements

Defendants next seek to preclude Plaintiff from testifying at trial, consistent with his deposition, about various statements his mother and OCJ officers made to him, both while he was confined and after his release and seizure. ECF No. 120. Defendants argue each statement is inadmissible hearsay. *Id.* Plaintiff responds that some exceptions to the hearsay rule *may* apply at trial and asks this Court to deny Defendants third motion *in limine* as premature. ECF No. 128. But Defendants demonstrate that several statements are clearly inadmissible and their motion in *limine* will be granted in part, accordingly.

Out-of-court statements offered for the truth of the matter asserted are hearsay statements. FED. R. EVID. 801(c); *see also United States v. Judd*, No. CR 21-20600, 2023 WL 3294117, at *3 (E.D. Mich. May 5, 2023). Unless an exclusion under Rule 801(d) or one of 23 exceptions under Rule 803 applies, hearsay statements are inadmissible at trial. *see* FED. R. EVID. 802.

### i.

Defendants first seek to exclude Plaintiff from testifying that his mother told him that she gave his anti-seizure medication, Keppra, to Officer Huff while Plaintiff was confined at OCJ. ECF No. 120 at PageID.2823–24 (citing ECF No. 45-11 at PageID.603 ("She told me she gave it to Officer Huff."). This is an out-of-court statement. *See* FED. R. EVID. 801(a) (defining "statement" as "a person's oral assertion"). And this out-of-court statement would be offered for its truth at trial—that Plaintiff's mother *in fact* delivered Plaintiff's Keppra to Officer Huff at OCJ. Plaintiff argues that he *may* offer the statement at trial to show how it affected him. But what was the effect? Plaintiff does not say and no relevant effect is obvious to this Court. [9]

---

[9] Instead of identifying how this statement affected him, Plaintiff cites a 1995 case in which the Sixth Circuit held that out-of-court "disparaging and racist comments" made by the defendants were admissible because they were not being offered for their truth value but, instead, were being

Turning to Rule 803, no exceptions apply to render this hearsay statement admissible. Plaintiff argues only that the statement "*may* be admissible to prove motive or intent" under Rule 803(3). ECF No. 128 at PageID.3326 (emphasis added). Not so. Although Rule 803(3) excepts hearsay statements which describe "the declarant's then-existing state of mind (such as motive, intent, or plan)," FED. R. EVID. 803(3), the rule "specifically excludes statements that relate to past events, as they are statements of 'memory or belief' to prove a fact remembered or believed." *Moorer v. Jackson,* No. 05-CV-74924, 2008 WL 723540, at *4 (E.D. Mich. Mar. 17, 2008); *see also Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-CV-056, 2015 WL 2341094, at *15 (S.D. Ohio May 14, 2015), *aff'd*, 846 F.3d 832 (6th Cir. 2017) ("Statements under [Rule] 803(3) must point towards the future rather than the past." (internal quotations omitted)); *Shepard v. United States*, 290 U.S. 96, 106 (1933) (noting the important distinction between forward-looking declarations of intent, to which Rule 803(3) applies, and statements regarding memories or past events, to which Rule 803(3) does not apply). Here, Plaintiff's mother told Plaintiff that she delivered his medication only *after* she did so. Rule 803(3) does not apply. Accordingly, Plaintiff will be precluded from testifying that his mother told him she delivered his Keppra to Officer Blake Huff on April 28, 2019.[10]

### ii.

Defendants next seek to preclude Plaintiff from testifying that his mother told him that Officer Huff told her that he would contact a nurse to inquire about Plaintiff's medication. ECF

---

offered to "demonstrate the racial attitudes" of the defendants. *Talley v. Bravo Pitino Rest.*, Ltd., 61 F.3d 1241, 1249 (6th Cir. 1995). But the statement at issue here is not disparaging nor racist and has no obvious purpose other than its truth value.

[10] Notably, Plaintiff's mother—Mary Curran—has been identified as one of Plaintiff's witnesses at trial. ECF No. 140 at PageID.3414. *Her* testimony, that she delivered Plaintiff's Keppra to OCJ on April 28, 2019, does not raise hearsay concerns.

No. 120 at PageID.2824 (citing ECF No. 45-11 at PageID.603). This testimony involves two separate statements: (1) Officer Huff's statement to Plaintiff's mother that he would contact the nurse; and (2) Plaintiff's mother's statement to Plaintiff relaying this conversation. Under the hearsay-within-hearsay rule, both statements must be independently admissible. FED. R. EVID. 805.

Both statements are hearsay under Rule 801 because both are out-of-court oral assertions Plaintiff would use only to prove the truth of the matter asserted: that Officer Huff contacted an ACH practitioner—a crucial component of Plaintiff's proofs at trial. *See supra* III.A; *see also* FED. R. EVID. 801. Again, Plaintiff does not identify any relevant effect on either listener—himself and his mother—and does not argue any exception to the hearsay rule applies to either statement other than Rule 803(3). *See* ECF No. 128. Although Rule 803(3) may render Officer Huff's statement to Plaintiff's mother admissible, as evidence of *his* then-existing state of mind and plan or intent to contact an ACH nurse, the state-of-mind exception does not apply to Plaintiff's mother's statement to Plaintiff. *See Moorer v. Jackson,* No. 05-CV-74924, 2008 WL 723540, at *4 (E.D. Mich. Mar. 17, 2008); *Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-CV-056, 2015 WL 2341094, at *15 (S.D. Ohio May 14, 2015), *aff'd*, 846 F.3d 832 (6th Cir. 2017); *Shepard v. United States*, 290 U.S. 96, 106 (1933). Because these out-of-court statements can only be relevantly offered for their truth value and no hearsay exception applies, Plaintiff will be precluded from testifying that his mother told him that Officer Huff told her he would contact a nurse regarding Plaintiff's medication.[11]

---

[11] Plaintiff conceded that he had no "firsthand knowledge" of the conversation between his mother and Officer Huff on April 28, 2019 and agreed that "[his] mom or Blake Huff would be the best people to tell us what happened in that conversation[.]" ECF No. 45-11 at PageID.605.

**iii.**

Lastly, Defendants seek to preclude Plaintiff from testifying about various statements OCJ officers made to him while he was confined on April 28, 2019, consistent with the following portions of Plaintiff's deposition:

> **Defense Counsel:** Did you know that your mom had come into the jail that night and brought your medication in?
> **Plaintiff:** Yes.
> **Defense Counsel:** Oh, you did know?
> **Plaintiff:** Yes.
> **Defense Counsel:** How did you know?
> **Plaintiff:** Either one of the COs or the officers had told me that my mom had brought that in. And I was asking if I could call someone to get my medication brought in, but they had told me my mom had brought it in, and they were going to contact the nurse to see if I could take it.
> . . .
> **Defense Counsel:** And what else did they say after that, why couldn't you have it?
> **Plaintiff:** Because they were contacting a nurse.
> . . .
> **Defense Counsel**: And they said they were going to contact the nurse to see if you could have it correct?
> **Plaintiff**: Correct
> **Defense Counsel**: And that was the only time you asked for your meds, you don't remember asking for your meds again?
> **Plaintiff**: I mean, throughout the whole night I was telling officers that I needed my meds, and they would tell me well, we can't give them to you.
> **Defense Counsel**: Okay
> **Plaintiff**: I was told numerous times I couldn't get them. And then [Officer] Sullivan . . . told me he would give them to me, but the nurse did not okay it.

ECF No. 120 at PageID.2827–29 (citing ECF No. 45-11 at PageID.610–11 (emphasis added)).

This deposition testimony reveals three different statements made by various OCJ officers[12] to Plaintiff: (1) that Plaintiff's mother delivered his Keppra; (2) that officers were contacting a nurse regarding the medication; and (3) that Plaintiff could not have his medication.

---

[12] Notably, if Otsego County was still a party to this case, the officers' statements to Plaintiff would likely be admissible non-hearsay statements of agents or employees of Plaintiff's party-opponent under Rule 801(d)(2). *See* FED. R. EVID. 801(d)(2)(D).

Further, Officer Sullivan's specific statement to Plaintiff that he couldn't have his medication *because* the "nurse did not okay it" encompasses the additional statement from the unidentified nurse that Plaintiff's medication should be withheld. Each statement will be addressed in turn.

Plaintiff cannot testify that OCJ officers told him that his mother delivered his Keppra. Like Plaintiff's mother's statement to Plaintiff that she delivered his Keppra, these are out-of-court statements which can only relevantly be offered for their truth at trial; and no hearsay exception applies. *See supra* Section III.C.3.i (noting that Rule 803(3) does not apply to past events or conditions and that Plaintiff has not identified any relevant non-hearsay purpose for this testimony).

But Plaintiff *can* testify that OCJ officers told him they "were going to contact" a nurse to see if Plaintiff could have his medication. Although these are out-of-court statements offered for their truth value and, thus, are hearsay under Rule 801, the statements are admissible exceptions to hearsay under Rule 803(3) as statements of a declarant's then-existing intent or plan. Unlike all other attempts by Plaintiff to invoke this exception, the statements at issue here are all *forward-looking*, describing the declarant-officers intent to call a nurse, rather than stating a past event or condition. Although the distinction between past and present may seem trivial, the Supreme Court has recognized that this distinction is critical for the purpose of triggering Rule 803(3)'s exception to hearsay, noting "[d]eclarations of intention . . . [are] sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored." *Shepard v. United States*, 290 U.S. 96, 106 (1933). Here, the officer-declarants were stating their intent or plan to call a nurse to approve Plaintiff's medication. These then-existing state-of-mind statements are admissible exceptions to the hearsay

rule and Defendants' third motion in *limine* will be denied to the extent it seeks to prohibit Plaintiff from testifying in this regard.

Lastly, Plaintiff cannot testify that (1) OCJ officers told him he could not have his medication, and (2) Officer Sullivan told him he could not have his medication *because* the "nurse did not okay it." The former is an out-of-court statement offered for its truth value and no relevant hearsay exception applies. *See* FED. R. EVID. 801; 802; 803. The latter is a hearsay statement within a hearsay statement and no relevant exception applies.[13] *See* FED. R. EVID. 805.

In sum, Defendants' third motion in *limine* seeking to preclude Plaintiff from testifying about what his mother and various OCJ officers told him will be granted in large part. It will be denied only to the extent it seeks to preclude Plaintiff from testifying that OCJ officers told him they were planning on contacting a nurse regarding his medication, as such statements fall within the hearsay exception for a declarant's then-existing state of mind.

### 4. Insurance, Respondent Superior, Prior Complaints

In their fourth motion *in limine*, Defendants seek to preclude Plaintiff from (1) making any statements "related to the legal theory of *respondeat superior*" under Rule 403 (2) making any statements "related to prior lawsuits against ACH Defendants" under Rule 404; and (3) making any statements "related to ACH Defendants having liability insurance" under Rule 408. ECF No. 121 at PageID.2835, 2845–48. In response, Plaintiff agrees that Rule 408 would bar any testimony

---

[13] As Defendants argue, even though these statements concern Plaintiff's prescription medication and epilepsy diagnosis, the hearsay exception for statements made for medical diagnosis or treatment does not apply because the statements Defendants seek to exclude were not made by Plaintiff but were, instead, made by OCJ officers or ACH employees. *Good v. BioLife Plasma Servs.*, L.P., 647 F. Supp. 3d 555, 562 (E.D. Mich. 2022) (noting "'the hearsay exception set forth in Rule 803(4) applies only to statements made by the one actually seeking or receiving the medical treatment,' not statements by consulting or treating physicians." (quoting *Field v. Trigg Cnty. Hosp., Inc.,* 386 F.3d 729, 736 (6th Cir. 2004))). Plaintiff does not argue to the contrary. *See* ECF No. 128.

concerning Defendants' insurance and that, in light of *Monell*'s holding, discussing the doctrine of respondent superior at trial would be improper. ECF No. 124 at PageID.2959–60. Thus, the only remaining issue is whether prior complaints and lawsuits against ACH are admissible at trial. They are, and Defendants fourth motion *in limine* will be denied to the extent it seeks to exclude this evidence.

Some factual context is necessary before turning to the admissibility analysis. On January 5, 2023, Magistrate Judge Patricia T. Morris found Defendants violated discovery orders by failing to provide documented instances of complaints against ACH regarding inadequate medical care, and directed them to cure the violation by January 30, 2023. ECF Nos. 83; 86. Defendants did so, and produced a "Loss Run Report", which contained 106 pages of complaints from inmates regarding ACH's medical care in the Midwest since 2017. ECF No. 124-2. Several specifically complained of ACH's failure to provide medication. *See*, *e.g.*, *id.* at PageID.3063 ("flr to provide IM w/ Keytruda for lung cancer and . . . other medical conditions); PageID.2970 ("flr to provide appropriate psych care or meds"); PageID.2971 ("flr to provide any pain medication for injuries"); PageID.2973 ("flr to prov. meds to shrink brain tumor"); PageID.2974 (in one case, "Flr to continue outside medications at jail," and, in another, "Flr to provide/denied heart medication"); PageID.2975 ("Flr to provide seizure medication"); PageID.2981 ("Flr to provide prescription medication for a variety of preexisting medical conditions"); PageID.2982 ("Flr to provide appropriate mental health medication"); PageID.2989 ("Flr to provide appropriate medication for diabetic"); PageID.2990 ("Deprived of Rx meds"); PageID.2998 ("Flr to provide appropriate meds and mental health care"); PageID.3012 ("Denied psychotropic medications leading to an anxiety attack"); PageID.3029 ("Pt. was not provided w/ appropriate pain medication for cancer-related pain"); PageID.3031 ("Failed to properly manage his blood pressure medication [resulting in]

several seizures") Several others specifically mentioned ACH's deliberate indifference to serious medical needs. *Id.* at PageID.2978, 2986, 2988, 2995, 2997, 3002, 3031.

This Loss Run report corroborates the provisionally-established fact that "ACH has had *some* instances of complaints that it either provided inadequate medical care or had inadequate staffing for a prison facility in the Midwest region since 2017." ECF No. 86 at PageID.2063 (emphasis added). Defendants now seek to exclude *any* testimony concerning *any* prior complaint or lawsuit against ACH as improper "bad acts" character evidence under Rule 404(b). But the two *Monell* theories Plaintiff pursues demand this evidence, which would be offered to show ACH's *knowledge or notice* of prior patterns of unconstitutional conduct, not for *propensity* as prohibited by Rule 404.

As explained, evidence is relevant if it has *any* tendency to make a fact of consequence more or less probable than it would be without the evidence. FED. R. EVID. 401; *supra* Section III.B. And Rule 402 provides that relevant evidence is admissible at trial unless prohibited by, among other things, other rules of evidence. FED. R. EVID. 402. Rule 403 provides that relevant evidence is inadmissible if its probative value is substantially outweighed by unfair prejudice. FED. R. EVID. 403. Against this backdrop, Rule 404(b) provides that "evidence of any other . . . wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). In other words, a party cannot introduce another's prior bad acts solely to show propensity—that the party acted *in accordance* with these prior bad acts on a particular occasion. But prior bad acts *are admissible* if introduced for a non-propensity purpose. FED. R. EVID. 404(b)(1)(2) (noting "other acts" evidence is admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident).

Enter *Monell* liability. As the Parties agree, ACH cannot be held liable under § 1983 solely because it employed someone who deprived Plaintiff of his constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). Instead, ACH can only be liable under § 1983 for its official policies. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694). But Plaintiff can evidence an "official policy" in four ways, by showing either (1) ACH's legislative enactments or official policies; (2) actions taken by ACH officials with final decision-making authority; (3) inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Plaintiff pursues two theories of *Monell* liability here, as explained *supra* Section III.A.

To succeed on his custom or practice theory of *Monell* liability, Plaintiff must prove by a preponderance of the evidence, among other elements, "(1) a clear and persistent pattern of illegal activity; (2) that Defendant ACH had constructive or actual notice of this pattern; [and] (3) Defendant ACH's 'tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction[.]'" *Smolinksi v. Advanced Corr. Healthcare, Inc.*, No. 1:23-CV-10998, 2023 WL 6519257, at *8 (E.D. Mich. Oct. 5, 2023) (quoting *Thomas*, 398 F.3d at 429).

Similarly, to succeed on his failure-to-train theory, Plaintiff must prove, among other elements, that ACH's inadequate training "is the result of [ACH']s deliberate indifference[.]" *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008). To satisfy this proof, Plaintiff can point to "prior instances of unconstitutional conduct demonstrating that [ACH] has ignored a

history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."[14] *Id.*; *see also Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Thus, ACH's prior bad acts are relevant and probative under Rule 401 as they increase the likelihood that ACH was on notice of a pattern of unconstitutional or unlawful conduct, which is a necessary element of Plaintiff's *Monell* claim under either theory he pursues. Further, the probative value of this evidence is not *substantially* outweighed by *unfair* prejudice to either ACH or Nurse Reynolds to bar its admission under Rule 403. Defendants cite *Watkins v. Genesee*, No. 13-13678, 2016 WL 727855 (E.D. Mich. Feb. 24, 2016) to the contrary because, there, this Court found that the probative value of bad acts evidence was substantially outweighed by unfair prejudice and the risk of confusing the jury. But that case is distinguishable. In *Watkins*, the "bad acts" evidence at issue only concerned one individual defendant, rather than the municipal defendant, and the plaintiff only pursued a failure-to-train *Monell* claim. *Id.* at *2. So the probative value of the bad acts evidence in *Watkins* was far less than the probative value of the bad acts evidence here, attributable not to Nurse Reynolds—the individual Defendant—but to ACH as a whole. And Defendants do not argue that this significant probative value is substantially outweighed by unfair prejudice.

---

[14] Plaintiff can also show the risk of withholding inmate medication was "so obvious or foreseeable that Defendant ACH was deliberately indifferent for failing to prepare its employees for it." *Smolinksi v. Advanced Corr. Healthcare, Inc.,* No. 1:23-CV-10998, 2023 WL 6519257, at *10 (E.D. Mich. Oct. 5, 2023) (internal quotations omitted). In other words, Plaintiff can prove this prong of his failure-to-train theory by showing ACH was on notice that, without better or additional training,, it was "so highly predictable" that its nurses would fail to administer adequate medical care. *Victor v. Reynolds*, 582 F. Supp. 3d 516, 523 (E.D. Mich. 2022). And this Court already held that "it is quite obvious that [ACH] would need to provide adequate training on making such decisions. Indeed, ACH could be deliberately indifferent by failing to train its nurses in whether to administer medication to an inmate . . . because it is obvious that its nurses will need to make such a determination." *Id.* at 524 (cleaned up).

Turning to Rule 404, Defendants have not shown that Plaintiff would use prior bad acts for a prohibited propensity purpose—i.e. to show that *because* ACH practitioners withheld inmate medication in the past, an ACH employee withheld Plaintiff's medication here. On the contrary, a non-propensity purpose is readily identifiable. To satisfy his *Monell* claim against ACH, Plaintiff would use the Loss Run Report and prior "bad acts" to show either (1) a clear and persistent pattern of illegal activity—in attempt to satisfy his custom or practice theory; or (2) prior instances of unconstitutional conduct demonstrating that ACH was clearly on notice that the training they provided practitioners on inmate medication was deficient and likely to cause injury—in attempt to satisfy his failure-to-train theory.

While Defendants argue that the prior bad acts could not go to "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as Rule 404(b)(2) recognizes as non-propensity purposes, ECF No. 121 at PageID.2847, Defendants ignore that this list within Rule 404(b)(2) is illustrative, not conclusive. FED. R. EVID. 404(b)(2). Rule 404(b)(2) allows the admission of prior bad acts for *any* non-propensity purpose such as, here, notice of wrongful conduct. *U.S. v. Knox*, 17 F. App'x 353, 356 (6th Cir. 2001); *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007).

Accordingly, Defendants' fourth motion in *limine* will be denied to the extent it seeks to exclude the Loss Run Report, containing "bad acts" of ACH, because such evidence is relevant and would not be used by Plaintiff for propensity purposes. *Trexler v. City of Belvidere*, No. 3:20-CV-50113, 2023 WL 415184, at *5 (N.D. Ill. Jan. 25, 2023) ("[P]rior bad acts are admissible to establish a pattern for a *Monell* claim. . . . if this type of evidence were barred by Rule 404(b), one would wonder how a plaintiff could ever prove a *Monell* claim based upon a custom or practice."); *see also DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 1429521, at *4 n. 2 (N.D. Ill.

Mar. 18, 2020) (noting that prior bad acts of an institutional body would contribute to a *Monell* claim to survive a motion in *limine* under Rule 404(b)). *Adams v. City of Shreveport*, No. CV 15-2637, 2017 WL 5559930, at *6 (W.D. La. Nov. 17, 2017) (granting defendants' motion in *limine* to exclude bad acts only because no *Monell* claims remained).

### 5. Officer Leach's Belief that Officer Tallent Called Nurse Reynolds

Finally, in their fifth motion in *limine*, Defendants seek to preclude Officer Trey Leach from testifying that he "believe[d] Officer Tallent attempted to call Nurse Reynolds" while Plaintiff was confined at OCJ on April 28, 2019, arguing that Officer Lech lacks personal knowledge under Rule 602, the testimony is substantially more unfairly prejudicial than probative under Rule 403, and invokes hearsay concerns under Rule 802. ECF No. 122 at PageID.2866 (emphasis omitted). Plaintiff responds that the motion is overbroad, the foundation for Officer Leach's belief may be laid at trial, and Officer Leach's testimony does not involve a "statement" that would raise hearsay concerns. ECF No. 126. Because Plaintiff may lay the foundation of Officer Leach's belief at trial and because the testimony is not inadmissible under Rule 403 nor 802, Defendant's fifth motion in *limine* will be denied without prejudice.

Recall that, on April 28, 2019, Officers Trey Leach and Tony Tallent were working at OCJ at the time Plaintiff arrived, until they were relieved by Officers Scott Musall and Joe Sullivan around 4:00 AM. ECF Nos. 38 at PageID.433; 45-11 at PageID.606; 49-6 at PageID.805. During his deposition, Officer Leach testified that he "believe[d]" Nurse Reynolds would have been called on April 28, 2019 and, when asked if he called Nurse Reynolds that night, he testified "I believe Officer Tallent attempted to call Nurse Reynolds. If not, then we would have called" Otsego Memorial Hospital personnel. ECF No.; 45-7 at PageID.564. But, throughout other parts of his deposition, Officer Leach testified that he generally did not remember the events of April 28, 2019.

*See id.* at PageID.564–65. And Officer Tallent expressly denied calling Nurse Reynolds during his deposition. ECF No. 49-5 at PageID.799.

If Officer Leach testified at trial, consistent with his deposition, that he *believed* Officer Tallent called Nurse Reynolds while Plaintiff was confined at OCJ, such testimony would be relevant, as it would tend to show OCJ staff called Nurse Reynolds regarding Plaintiff's medication—part of an essential proof for both Plaintiff's individual and municipal Eighth Amendment claims. *See* FED. R. EVID. 401; *supra* Section III.A. And the probative value of this testimony would not be substantially outweighed by unfair prejudice or confusion under Rule 403. Defendants conclusively argue that the jurors would be confused because Officer Tallent and Officer Leach's testimony would contradict each other. ECF No. 122 at PageID.2871. But the jury is bound to hear conflicting testimony at trial, and is perfectly capable of deciding what weight to afford Officer Leach's testimony that he *believes* Officer Tallent called Nurse Reynolds squared against Officer Tallent's testimony that he did not call her.

Having established the admissibility of this testimony under Rules 401 and 403, this Court turns to Defendants' Rule 602 argument. Rule 602 provides that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. "The threshold for Rule 602 is low," and evidence will only be excluded under this Rule if "no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Smith*, 516 F. App'x 592, 595 (6th Cir. 2013) (internal quotations omitted). Defendants argue that, because Officer Leach testified throughout his deposition that he does not remember some specifics of April 28, 2019, he cannot testify as to his belief that Officer Tallent called Nurse Reynolds that evening. ECF No. 122 at PageID.2870. Not so. Officer Leach worked at OCJ on April 28, 2019

- 28 -

and was the specific officer responsible for booking Plaintiff when he arrived. ECF No. 45-7 at PageID.563–64. He can testify at trial about the things he perceived that night. The fact that he can't remember specific details goes to the weight and credibility of his testimony, not to admissibility. If Officer Leach is called by Plaintiff as a witness, he will almost certainly be cross-examined on the issue.

To Defendants' point, Officer Leach did not testify at his deposition as to *why* he believes Officer Tallent called Nurse Reynolds.[15] To the extent Defendants believe this testimony lacks foundation, Plaintiff is free to lay it at trial, and Defendants are free to object if they find it inadequate. However, at this pretrial stage, this Court cannot say that Officer Leach's testimony as to his own belief is inadmissible. Thus, Defendants fifth and final motion in *limine* will be denied without prejudice.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion in *Limine*, ECF No. 117, is **DENIED WITHOUT PREJUDICE.**

Further, it is **ORDERED** that Defendants' Motion *in Limine* to Exclude Negative Evidence, ECF No. 118, is **DENIED WITHOUT PREJUDICE.**

Further, it is **ORDERED** that Defendants' Motion *in Limine* to Limit Plaintiff's Damages to Those Directly Related to His Physical Injury, ECF No. 119, is **DENIED WITH PREJUDICE.**

Further, it is **ORDERED** that Defendants' Motion *in Limine* to Preclude Hearsay Statements, ECF No. 120, is **GRANTED IN PART,** to the extent it seeks to preclude Plaintiff

---

[15] Defendants anticipate that the answer to this question would invoke hearsay. ECF No. 122 at PageID.2871–72. But the record before this Court at this pretrial stage lacks any indication that Officer Leach's deposition testimony was based on what someone told him. He testified as to his belief. To the extent Officer Leach's testimony at trial implicates the hearsay rule or suggests that his belief was formed through improper out-of-court statements, Defendants are free to object.

from testifying at trial (1) that his mother told him she delivered his Keppra to Officer Huff on April 28, 2019; (2) that his mother told him Officer Huff told her that he would contact a nurse; (3) that OCJ officers told him his mother delivered his Keppra; and (4) that OCJ officers told him he could not have his medication.

Further, it is **ORDERED** that Defendants' Motion *in Limine* to Preclude Hearsay Statements, ECF No. 120, is **DENIED IN PART**, to the extent it seeks to preclude Plaintiff from testifying at trial that OCJ officers told him they were planning on contacting a nurse or medical practitioner.

Further, it is **ORDERED** that Defendants' Motion *in Limine* to Preclude Reference to Insurance Coverage, Prior Lawsuits, and Respondeat Superior, ECF No. 121, is **GRANTED IN PART**, to the extent it seeks to exclude evidence of the Defendants' insurance coverage and statements concerning respondeat superior liability.

Further, it is **ORDERED** that Defendants' Motion *in Limine* to Preclude Reference to Insurance Coverage, Prior Lawsuits, and Respondeat Superior, ECF No. 121, is **DENIED IN PART**, to the extent it seeks to exclude the Loss Run Report and evidence of Defendants' prior bad acts.

Further, it is **ORDERED** that Defendants' Motion *in Limine* to Preclude Plaintiff from Introducing the Testimony of Officer Leach that Officer Tallent Called Defendant Reynolds, L.P.N., ECF No. 122, is **DENIED WITHOUT PREJUDICE**

**This is not a final order and does not close the above-captioned case.**

Dated: February 27, 2024                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge