UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL VICTOR,

           Plaintiff,                      Case No. 1:20-cv-13218

v.                                               Honorable Thomas L. Ludington
                                                United States District Judge

KIMBERLY REYNOLDS, and ADVANCED
CORRECTIONAL HEALTHCARE, INC.,
                                                Honorable Patricia T. Morris
           Defendants.                  United States Magistrate Judge
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S THIRD MOTION FOR SANCTIONS**

Less than three weeks before trial, and after his first two Motions for Default Judgement were denied, Plaintiff Michael Victor filed a Motion seeking to sanction Defendants Advanced Correctional Healthcare Inc. (ACH) and Nurse Kimberly Reynolds in the form of a default judgment or adverse inferences for alleged discovery violations. But Defendants have already been sanctioned for earlier discovery violations, and they have not violated any of this Court's orders since then. Moreover, Plaintiff has not shown he was prejudiced by Defendants' timely, supplemental production of ACH employee timesheets. Thus, Plaintiff's Motion will be denied and Defendants will not be sanctioned in any form.

**I.**

What follows is a brief summary of the factual background and procedural history that is detailed in this Court's February 5, 2024 Opinion an Order. *See Victor v. Reynolds*, No. 1:20-CV-13218, 2024 WL 416376, at *1–7 (E.D. Mich. Feb. 5, 2024).

Just after midnight on April 28, 2019, Plaintiff Michael Victor was arrested outside a bar for disorderly conduct, and was transported to Otsego County Jail (OCJ). ECF No. 38 at PageID.432. Plaintiff is epileptic and, at around 1:00 AM, Plaintiff's mother arrived at OCJ and

delivered Plaintiff's anti-seizure medication, Keppra, to law enforcement, noting Plaintiff's medical needs. *Id.* at PageID.433; ECF No. 45-11 at PageID.606. But Plaintiff never received his medication and, minutes after he was released from OCJ around 11:30 AM, Plaintiff suffered a seizure, fell face-first onto the cement, and broke his jaw. ECF No. 38 at PageID.435–36.

In December 2020, Plaintiff filed a 42 U.S.C. § 1983 Complaint alleging deprivations of his Eighth Amendment rights against Otsego County, Officer Blake Huff, the City of Gaylord, Advanced Correctional Healthcare, Inc. (ACH)—OCJ's contractual inmate-healthcare-provider—and Nurse Kimberly Reynolds—an ACH employee Plaintiff alleges worked at OCJ while he was confined there and was responsible for his medication being withheld. ECF No. 38. But, after two sets of voluntary dismissals, the only remaining Defendants are ACH and Nurse Reynolds. *See* ECF Nos. 29; 36.

### A. Early Discovery Disputes

Discovery has proved convoluted, both because of the nature of this case and these particular Parties. On one hand, it is Plaintiff's burden to prove his constitutional claim—that Defendants were deliberately indifferent to his serious medical needs. *See generally Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020). On the other hand, Defendants are the only Parties who have the access to information Plaintiff may need to attempt to satisfy this burden. And Defendants have not been the most forthcoming throughout the past two years of discovery.

In February 2022, Defendants filed a Motion for Summary Judgement. ECF No. 45. Plaintiff responded that discovery was incomplete, ECF No. 48, and filed a motion to compel. ECF No. 54. These motions were referred to Magistrate Judge Patricia T. Morris who, in June 2022, granted Plaintiff's motion to compel in part, and ordered Defendants to produce:

(1) "a representative from ACH who provided active management of the contract between [OCJ] and ACH at the time of the incident in the complaint within 60 days;"
(2) either "[A] phone records (cellular or otherwise) of all persons who were working or on a call during the relevant time period of the incident alleged in the complaint, i.e., from the time Plaintiff was booked until he was released on April 28, 2019, or [B] authorization and any information necessary to provide Plaintiff the ability to access those records from any phone provider within 30 days[;]" and
(3) "for the relevant time period (booking until release), staffing schedules and any confirmation documentation that staff listed on the schedule actually worked at the time indicated on the schedule, e.g., time sheets, pay stubs, or the like, within 45 days[.]"

ECF No. 64 at PageID.1321–22 (the "June 2022 Discovery Order"). Judge Morris also directed Defendants to comply with Plaintiff's requests for eight different categories of documents, which Plaintiff requested in a notice of taking deposition duces tecum. ECF No. 83 at PageID.2006. This notice sought production of (1) "ACH's staffing information (including the identities and days worked) for on-call providers scheduled to be on call and who was on call at OCJ from January 1, 2019 to January 1, 2021[;]" (2) "[a]ll instances of complaints . . . of either ACH providing inadequate medical care or having inadequate staffing for a prison where ACH was contracted by a prison facility in the Midwest region since 2017[;]" and (3) "ACH's complete staffing schedule for OCJ from January 1, 2019 to January 1, 2021, including the identities of any ACH employees who worked during this time." ECF No. 54-3 at PageID.882–83.

On July 5, 2022, Plaintiff deposed Dr. Jill Bresnahan–ACH's selected representative. ECF No. 69-2. But Dr. Bresnahan did not "provide active management of the contract" between OCJ and ACH on April 28, 2019 because she was not employed with ACH at the time. See *id*. at PageID.1367, 1398; *see also* ECF No. 83 at PageID.2006. Nevertheless, Dr. Bresnahan testified that ACH does not have many of the policies or procedures sought by Plaintiff and did not produce any documents responsive to the categories outlined in Plaintiff's notice of taking subpoena duces

tecum. *See* ECF No. 69-2 at PageID.1354–66; *see also* ECF No. 54-3 at PageID.882–83. Instead, Dr. Bresnahan explained that the jails set their own policies for staffing and contacting ACH practitioners, and each ACH practitioner sets their schedule by working with the serviced jail—not ACH. ECF No. 69-2 at PageID.1354, 1364, 1370, 1376, 1379. Thus, Dr. Bresnahan testified, ACH does not proactively create or maintain "schedules" for its practitioners; it instead only reactively knows when a practitioner worked for a serviced jail only if a practitioner logs their worked time into ACH's online payroll system, Paycom. *Id.* at PageID1377.

Dr. Bresnahan also identified Nurse Courtney Brinkman as ACH's primary on-call practitioner for OCJ on April 28, 2019. ECF No. 69-2 at PageID.1380. And although Defendants later explained that Nurse Brinkman no longer worked for ACH, Defendants provided Plaintiff with her cell phone number and a signed, notarized authorization to allow Plaintiff to obtain her phone records. ECF No. 107 at PageID.2554. In August, 2022, Defendants supplementally produced Nurse Brinkman's subpoenaed phone records which confirmed she neither called OCJ nor received a call from OCJ on April 28, 2019. *Id.* at PageID.2555–56; *see also* ECF No. 107-7 at PageID.2621–28. Defendants also produced Nurse Brinkman's timesheets, which further reflected that she did not service OCJ on April 28, 2019. *See* ECF Nos. 107 at PageID.2555; 107-6 at PageID.2615.

### B. Plaintiff's First Motion for Default Judgment

Plaintiff filed his first Motion for Default Judgement in October 2022, arguing Defendants violated the June 2022 Discovery Order. ECF No. 69. Judge Morris concluded Defendants violated the June 2022 discovery order by (1) failing to provide documented complaints of inadequate medical care and staffing and (2) failing to provide scheduling information and phone records of backup practitioners. ECF No. 83. Yet Judge Morris recommended this Court deny Plaintiff's first

Motion for Default Judgement because this drastic remedy was unwarranted. *Id.* at PageID.2025. Accordingly, this Court denied Plaintiff's Motion, directed Defendants to cure the two discovery violations on or before January 30, 2023, and sanctioned Defendants by directing the following facts provisionally established:

> (1) ACH has had some instances of complaints that it either provided inadequate medical care or had inadequate staffing for a prison facility in the Midwest region since 2017[;] [and]
> (2) One of the corrections officers supervising Plaintiff's detention called one of ACH's employees to seek permission to administer Plaintiff's medication.

ECF No. 86 (the "January 2023 Discovery Order") (internal citations omitted).

To cure the first violation, Defendants timely produced a "Loss Run Report" which contained documented instances of complaints regarding ACH's inadequate medical care or staffing within the Midwest. ECF No. 107 at PageID.2561. To cure the second violation, Defendants timely produced a staffing matrix which identified nine medical professionals, including four primary and backup ACH practitioners, who serviced OCJ from February 4, 2019–July 17, 2019. ECF No. 87-4 at PageID.2106. The matrix identified Nurse Brinkman as the primary practitioner on April 28, 2019 and Jill Nocerini as the backup practitioner. *Id.* Having already produced Nurse Brinkman's phone records, Defendants explained that Nurse Nocerini no longer works for ACH but provided her last known address, email address, and cell phone number. *Id.*

### C. Plaintiff's Second Motion for Default Judgment

Finding this production inadequate, Plaintiff filed a *second* Motion for Default Judgement in July 2023. Judge Morris recommended this Court deny Plaintiff's second Motion for Default Judgement, too, because Plaintiff had not shown that Defendants violated any discovery orders. ECF No. 112 at PageID.2715. This Court overruled Plaintiff's subsequent objections and denied Plaintiff's second Motion for Default on February 5, 2024. ECF No. 135. Despite concluding

Defendants complied with all discovery orders and cured their prior violations, this Court directed Defendants to produce, by February 20, 2024, the timesheets of the three practitioners identified on the staffing matrix who could have *plausibly* been called to service OCJ on the night Plaintiff was confined there: (1) Jill Nocerini; (2) Joseph Mashni; and (3) Wilma Kagarise. *Id.* at PageID.3387–88. If the timesheets did not reflect that any of these practitioners logged time for payment on April 28, 2019, this Court noted it would no longer provisionally establish that an OCJ official called an ACH employee regarding Plaintiff's medication that day. *Id.*

On February 13, 2024, Defendants produced all timesheets this Court requested. ECF No. 141. None of them reflected that any ACH practitioner serviced OCJ on April 28, 2019. ECF No. 141-1 at PageID.3438 (Nocerini); PageID.3451 (Mashni); PageID.3459 (Kagarise).

### D. Plaintiff's Third Motion for Default Judgment

Two weeks later, and three weeks before trial, *see* ECF No. 115, Plaintiff filed a *third* Motion for Default Judgment.[1] ECF No. 146. The only *new* argument Plaintiff asserts is that Defendants' court-ordered supplemental production of timesheets shows that they *could have* produced the timesheets two years ago, as Plaintiff contends they were directed to do by the June 2022 Discovery Order. *Id.* at PageID.3531.

Defendants respond that their conduct did not violate any discovery order, and that even if their conduct was violative, Plaintiff cannot show that the violation was in bad faith or willful. ECF No. 148 at PageID.3600, 3610–12.

---

[1] The Motion is titled "Plaintiff's Motion for for Sanctions Including but not Limited to Provisionally Established Facts, Adverse Inference, Default, and or Relief From Order Pursuant to Fed. R. Civ. P. 60(b)." ECF No. 146 at PageID.3512 (emphasis omitted, duplicate word in original). And although the Motion also seeks, in the alternative, lesser sanctions in the form of adverse inferences, the Motion primarily seeks a default judgment. *Id.* at PageID.3522.

## II.

If a party violates or fails to comply with discovery orders, Rule 37(b)[2] authorizes district courts to sanction the party "in a variety of ways, including dismissal . . . or enter[ing] [a] default judgment[.]" *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (citing FED. R. CIV. P. 37(b)(2)(C)); *see also Kucinskas v. Fleetwood Motor Homes of Indiana, Inc.* No. 06-12195, 2008 WL 4378105, at *1 (E.D. Mich. Sept. 23, 2008). But a default judgment is a "drastic" remedy "which should be [awarded] only in the most extreme cases[.]" *Stooksbury v. Ross*, 528 F. App'x 547, 552 (6th Cir. 2013) (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983)). Rule 37 sanctions, including default judgment, are discretionary and reviewed for abuse of this discretion on appeal, *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 491 (6th Cir. 2014), by applying the following *Freeland* factors:

> (1) whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault;
> (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery;
> (3) whether the party was warned that failure to cooperate could lead to the sanction; and
> (4) whether less drastic sanctions were first imposed or considered.

*Victor v. Reynolds*, 649 F. Supp. 3d 499, 505 (E.D. Mich. 2023), *reconsideration denied*, No. 1:20-CV-13218, 2023 WL 4157616 (E.D. Mich. June 23, 2023) (citing *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)); *see also Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755,

---

[2] Plaintiff's Motion also cites Civil Rule 60(b)(6), which authorizes a district court to relieve a party from a final judgment or order if "any . . . reason . . . justifies relief." FED. R. CIV. P. 60(b)(6). Rule 60(b)(6) relief is only warranted in "unusual and extreme situations where principles of equity *mandate* relief." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990) (emphasis in original)). But, aside from citing Rule 60(b) in the Motion's title and list of controlling authorities, Plaintiff does not advance his Rule 60 argument whatsoever. *See* ECF No. 146 at PageID.3512, 3526. Indeed, it is unclear what "order" or Plaintiff even attempts to seek relief from. *See generally id.* This argument, to the extent Plaintiff properly raises it, is without merit.

766 (6th Cir. 2005) A default judgment may be imposed *only* if the court concludes, consistent with the first *Freeland* factor, that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault. *Abbe*, 916 F.2d at 107.

### III.

Plaintiff's third Motion for Default Judgement fails at its first step. Plaintiff has not shown that Defendants violated this Court's discovery orders. Plaintiff argues that Defendants violated this Court's June 2022 Discovery Order, ECF No. 83 at PageID.2006 (referring to ECF No. 54-3 at PageID.882–883), because Plaintiff contends this Order "call[ed] for the production" of Nocerini's, Kagarise's, and Mashni's timesheets years ago yet Defendants only recently produced them. ECF No. 146 at PageID.3535. But this Court already rejected Plaintiff's argument—at the core of his *second* Motion for Default Judgment—that the June 2022 Discovery Order required Defendants to produce timesheets for practitioners who did not "actually work" on April 28, 2019. *v. Reynolds*, No. 1:20-CV-13218, 2024 WL 416376, at *9 (E.D. Mich. Feb. 5, 2024). Defendants' subsequent, additional production of Nurse Nocerini's timesheet—along with the timesheets of two other ACH practitioners who were not even scheduled to be on call at OCJ while Plaintiff was confined there—does not violate this Court's discover orders.

And even if Defendants' conduct was violative, sanctions—let alone default judgment—are unwarranted. Nothing suggests that Defendants' timely production of the additional timesheets in response to this Court's Order was in bad faith. Further, Defendants' *additional* production can hardly be said to have prejudiced Plaintiff. Plaintiff asserts he is "severely prejudiced" because he is now, at the eve of trial, "unable to [depose] these practitioners" cynically noting they may have "intentionally failed to record their time . . . to cover their tracks." ECF No. 146 at PageID.3520. But Plaintiff knew of these individuals, their schedule, and Jill Nocerini's contact information as early as January 18, 2023, ECF No. 91 at PageID.2125, prior to the close of discovery. ECF No.

86. Indeed, far from "trial by surprise," ECF No. 146 at PageID.3525, the timesheets revealed *nothing new* and only corroborated Defendants' continued assertion that no ACH practitioner was ever called by OCJ officials on April 28, 2019. *See* ECF No. 107 at PageID.2548.

In sum, because Defendants' timesheet production did not violate this Court's discovery Orders and Plaintiff has not shown bad faith nor prejudice, Defendants will not be sanctioned in any form and Plaintiff's Motion will be denied.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Third Motion for Sanctions, ECF No. 146, is **DENIED.**

Further, consistent with this Court's February 2024 Opinion, ECF No. 135, and satisfied that the timesheets timely produced by Defendants did not reflect that any identified ACH practitioner logged work hours at OCJ on April 28, 2019, *see* ECF Nos. 141; 141-1, it is **ORDERED** that this Court will **REMOVE** the provisionally-established fact that at least one OCJ official called at least one ACH employee on April 28, 2019.[3] *See* ECF No. 86 at PageID.2062–63, 2065.

**This is not a final order and does not close the above-captioned case.**

Dated: March 8, 2024          s/Thomas L. Ludington
                              THOMAS L. LUDINGTON
                              United States District Judge

---

[3] Defendants will still be sanctioned for their prior discovery violations in the form of the established fact that "ACH has had some instances of complaints that it either provided inadequate medical care or had inadequate staffing for a prison facility in the Midwest region since 2017." *See* ECF No. 86 at PageID.2062–63, 2065.